JOANN SHIELDS (4664)
SHIELDS LAW FIRM, P.C.
13636 Vestry Road, Suite 1000
Draper, Utah   84020
Tel. (801) 816-9592
Fax (801) 816-9593
jshields@shieldslawfirm.net

*Attorneys for Plaintiffs Tamara Rae Larsen
and Riverbend Ranch Equestrian Center, LLC*

___

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

___

| | |
|---|---|
| RIVERBEND RANCH EQUESTRIAN CENTER, LLC, a Utah Limited Liability Company; and TAMARA RAE LARSEN, an Individual,<br><br>    Plaintiffs,<br><br>vs.<br><br>ROBERT DUVALL, an individual; ROBERT CARLINER, an individual; WILD HORSES PRODUCTIONS ENTERTAINMENT LLC, a Canceled California Limited Liability Company; and JOHN DOE DEFENDANTS I - XX,<br><br>    Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM BY DEFENDANT WILD HORSES PRODUCTIONS ENTERTAINMENT LLC**<br><br>Civil No. 2:15-cv-00751-JNP-EJF<br><br>The Honorable Jill Parrish<br><br>(ORAL ARGUMENT REQUESTED) |

___

Plaintiff Tamara Rae Larsen, by and through her counsel, Joann Shields, of and for Shields Law Firm, P.C., hereby submits the following PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM BY

DEFENDANT WILD HORSES PRODUCTIONS ENTERTAINMENT LLC.  Ms. Larsen respectfully requests oral argument.

## INTRODUCTION

Defendant Wild Horses Entertainment Productions, LLC's ("WHEP") motion for leave to amend the counterclaim seeks to drop Count II for breach of the Location Agreement, which claims are barred under the Settlement Agreement and Mutual Release of Claims, dated February 6, 2015 ("Settlement Agreement," Exhibit "B" to Amended Answer to Counterclaim, dated December 22, 2015, Docket No. 13) The plaintiffs do not oppose that portion of the motion.

WHEP's motion and proposed Amended Answer and Counterclaim also asks to maintain Counterclaim Count I ("CCI"), which would be futile, because WHEP did business in the State of Utah without ever registering with the Division of Corporations and, pursuant to Utah Code Ann. § 48-3a-902, is precluded from prosecuting any counterclaim, much less CCI.   Because WHEP is prohibited from bringing any counterclaim, the motion for leave to amend should be denied insofar as it seeks to maintain CCI.

Even if WHEP had registered to do business in Utah, allowing CCI — a frivolous strike suit — would be futile on the following grounds:

1. WHEP lacks standing to sue, and therefore this Court lacks subject matter jurisdiction over CCI, which requires dismissal.

2. Because WHEP did not incur legal damages, CCI improperly seeks the equitable remedy of disgorgement of profits for alleged breach of contract, and, in any event, RRLLC earned no profits and instead suffered losses as a result of WHEP's conduct.

3. The Utah Revised Limited Liability Act, Utah Code Ann. § 48-3a-304, shields Tamara Rae Larsen from individual liability for RRLLC's efforts to rid itself of the dangerous eyesore prop WHEP left on its property after filming *Wild Horses*.

Ms. Larsen therefore respectfully requests that the Court deny the motion for leave to amend insofar as it seeks allowance of CCI.

## PROCEDURAL AND HISTORICAL BACKGROUND

1. WHEP is a production company formed for the purpose of filming *Wild Horses* in the State of Utah.

2. In 2014, WHEP negotiated contracts, set up an office, hired employees and generally did business in the State of Utah in connection with filming *Wild Horses* within the State.

3. As stated in the Location Agreement, WHEP maintained a place of business at 1000 West 2610 South, Salt Lake City, Utah 84119, where that contract was entered on July18, 2014.  (Exhibit "A" to Complaint, Docket No. 2-A)

4. The Settlement Agreement, dated February 6, 2015 and signed by defendant Robert Carliner, shows WHEP's principal office address as 1000 West 2610 South, Salt Lake City, Utah 84119.  (Settlement Agreement, Exhibit "B" to Amended Answer to Counterclaim, Docket No. 13-2)

5. WHEP transacted business in the State of Utah by entering the subject  Location Agreement and Settlement Agreement.

6. On information and belief, WHEP entered numerous other contracts within the State of Utah and with Utah citizens, including without limitation, other location agreements.

7. Although WHEP was briefly registered in Delaware, for failure to pay taxes, its registration was canceled as of at least June 1, 2015 — over three months before this action was commenced and nearly five months before WHEP counterclaimed. (Shields Dec., Ex. A; "Entity Detail" for Wild Horses Entertainment Productions, LLC, from Delaware Division of Corporations website, affixed and incorporated as Attachment 2 to Ex. A)

8. Utah Code Ann. § 48-3a-902 provides: "A foreign limited liability company may not do business in this state until it registers with the division under this chapter."

9. In violation of Section 48-3a-902, Wild Horses did business in the State of Utah without ever registering with the Utah Division of Corporations. (Declaration of Joann Shields, dated May 29, 2016, attached and incorporated as Exhibit "A"; Utah Division of Corporations on-line search results for "Wild Horses Entertainment Productions, LLC," Attachment 1 to Ex. A)

10. Utah Code Ann. § 48-3a-902(2) permits Wild Horses to defend this action but prohibits it from bringing any counterclaim.

11. At all times from June 1, 2015 to date — including when the complaint and counterclaim were filed, WHEP does not appear to have been registered to do business in any state in the nation.

12. CCI alleges breach of the Location Agreement, based on a post unsuccessfully attempting to sell for Five Hundred Dollars ($500.00) a shed WHEP shoddily constructed for a prop ("Prop") but did not remove from plaintiff Riverbend Ranch Equestrian Center, LLC's ("RRLLC") property after filming ended. (Declaration of Tamara Rae Larsen, dated May 31, 2016, attached and incorporated as Exhibit "B")

13. The alleged post describes the Prop as used in "a" Robert Duvall film and does not allude to WHEP or *Wild Horses*, consequently, WHEP did not suffer an Article III injury and thus lacks standing to sue under CCI. This Court therefore lacks subject matter jurisdiction over the claim.

14. As further proof of lack of standing to sue, CCI fails to allege any contractual damages and instead improperly seeks the equitable remedy of disgorgement of profits from the Prop's sale, which remedy is generally unavailable in breach of contract claims.

15. In fact, the Prop never even attracted a potential buyer and went unsold. (Larsen Dec., Ex. B)

16. WHEP constructed the Prop on RRLLC's property, and it has incurred expenses to have the hazardous eyesore removed. (Larsen Dec., Ex. B)

17. Ms. Larsen did not post in her individual capacity, but rather, solely in her capacity as River Bench Ranch's member. (Larsen Dec., Ex. B)

18. CCI seeks a judgment against Ms. Larsen in her individual capacity, but, because she acted only as a RRLLC member and on its behalf, the Utah Revised Limited Liability Act,48-3a-304, prohibits suit against her individually. (Larsen Dec., Ex. B)

19. Because CCI would be subject to dismissal if allowed to continue, leave to amend would be futile insofar as it seeks CCI's allowance.

### **FED. R. CIV. P. 15(a) STANDARDS**

Although Fed.R.Civ.P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. *Id*. at 561. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Jefferson County*

*School District No. R–1 V. Moody's Investor's Services, Inc.*, 175 F.3d 848, (10th Cir. 1999) (affirmed denial of leave to amend where antitrust claims would have been subject to dismissal); *see TV Communications Network, Inc., v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir.1992).[1]

**ARGUMENT**

Because it never registered to do business in the State of Utah, WHEP is statutorily prohibited from bringing CCI.  In any event, allowing CCI would be futile, because (1) WHEP lacks standing to sue and thus the Court lacks subject matter jurisdiction; (2) CCI alleges no legal damages proximately caused by the alleged breach of contract and instead seeks the unavailable remedy of disgorgement of profits, of which RRLCC earned none; and (3) the Utah Revised Limited Liability Act § 48-3a-304 bars suit against Ms. Larsen in her individual capacity.  She therefore requests that leave to allow CCI to continue be denied.

I. **BECAUSE WHEP NEVER REGISTERED TO DO BUSINESS IN UTAH, IT IS STATUTORILY PROHIBITED FROM PROSECUTING ANY COUNTERCLAIM.**

---

[1]WHEP's published, controlling cases do not support amendment.  In *Lind v. Aetna,* 466 F.3d 1195, 1199-1202 (10th Cir. 2006), the Tenth Circuit affirmed denial of leave to amend where the proposed amendment sought damages under a statute that allowed only equitable as opposed to legal remedies — which is analogous to WHEP's seeking equitable relief under a contract claim for which legal remedies are available.  *Albers v. Board of County Com'rs of Jefferson County, Colo.*, 771 F.3d 697, 705 (10th Cir. 2014), affirmed denial of leave to amend, holding liberality has its limits.  *Hom v. Squire*, 81 F.3d 969, 673 (10th Cir. 1996), affirmed denial of leave to amend.  *Hardin v. Manitowac-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982), concerns trial of a phantom defendant by consent.  *Gillette v. Tansy*, 17 F.3d 308, 312-13 (10th Cir. 1994), concerns lenity toward a *pro se* criminal defendant convicted of serious crimes.  *Foman v. Davis*, 371 U.S. 178, 182 (S. Ct. 1962) and *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman*, 371 U.S. at 182), hold leave should not be "freely given" if the "underlying . . . circumstances" many not be "a proper subject of relief," which describes WHEP's circumstances of being barred from bringing suit.

WHEP was never registered to do business in Utah and was canceled in Delaware months before this action commenced. It appears WHEP is currently not qualified to do business in any state in the country. Consequently, Utah statute prohibits WHEP from prosecuting this counterclaim.

"[A] federal court sitting in diversity must apply the substantive law of the state in which it sits, . . . ." *Boyd Rosene and Associates, Inc. v. Kansas Mun. Gas Agency Eyeglasses*, 123 F.3d 1351, 1352 (10TH Cir. 1997).

Utah Code Ann. § 48-3a-902(2) and (3) provide:

> (2) A foreign limited liability company doing business in this state may not maintain an action or proceeding in this state unless it is registered to do business in this state.
>
> (3) The failure of a foreign limited liability company to register to do business in this state does not impair the validity of a contract or act of the foreign limited liability company or preclude it from defending an action or proceeding in this state.

Utah courts have long interpreted statutes prohibiting unregistered entities from doing business or maintaining suits in the State. In *E. J. Horton v. Richards*, 594 P.2d 891, *passim* (Utah 1979), applying an analogous Business Corporation Act statute prohibiting unregistered entities from bringing suit, the Supreme Court affirmed dismissal of a complaint by an entity that had "never applied for, or procured, a certificate of authority to do business in Utah . . . ." The Court stated the statute's public policy and governmental purpose as follows:

> The purpose of barring a foreign corporation from seeking affirmative relief is to compel compliance with state taxing and regulatory laws compliance with state taxing and regulatory laws. That purpose is best served by requiring the foreign corporation to comply first as a condition to permitting it to assert a claim upon which relief may be granted.

*Id*. at 894.

## II.     ALLOWING CCI WOULD BE FUTILE, BECAUSE IT WOULD BE SUBJECT TO DISMISSAL.

Even if WHEP were authorized to bring suit, which it is not, the plaintiffs would move for summary dismissal of the frivolous CCI alleging breach of the Location Agreement. CCI is fatally defective on its face, including for lack of standing and thus lack of subject matter jurisdiction. Allowing CCI to continue under the proposed amendment would therefore be futile.

### A.     Because WHEP did not Suffer an Article III Injury and Incur Contract Damages, It Lacks Standing to Sue under CCI, and this Court Lacks Subject Matter Jurisdiction over the Claim.

WHEP was not suffered no Article III injury and or legal damages, therefore it lacks standing to sue. CCI should not be allowed to continue, because the Court lacks subject matter jurisdiction over it.

#### 1.     WHEP lacks standing to sue under CCI.

Location Agreement ¶ 5 states:

> **No Photography by LESSORS.**  The LESSORS shall not make or authorize any photography, advertising or publicity in connection with the Picture without the PRODUCTION COMPANY's prior written consent.

(Location Agreement, Docket No. 2-D)

CCI alleges breach of Location Agreement ¶ 5 allegedly arising from RRLLC's unsuccessful effort to sell for $500.00 the cheap, shoddily constructed, dangerous Prop WHEP abandoned after filming *Wild Horses* on RRLLC's property.  (Larsen Dec., Ex. B)

The post makes no reference to *Wild Horses* or WHEP and therefore cannot possibly be construed as "advertising . . . in connection with the Picture."  (Location Agreement ¶ 5, Docket

No. 2-D) The post is merely descriptive — saying the prop was used in "a" Robert Duvall film. Mr. Duvall is not a party to the Location Agreement.

RRLLC made no profits, and WHEP suffered no Article III injury and incurred no damages.  (Larsen Dec., Ex. B, and Invoice of Autogate Plus LLC, affixed as Attachment 1 to Ex. B) Indeed, RRLLC incurred damages as a result of the abandoned prop because it was required to pay Nine Hundred Seventy Dollars ($970.00) to have the hazardous eyesore removed.  (Id.)

Under Article III of the United States Constitution, judicial power and thus jurisdiction extend only to "cases" and "controversies."  U.S. CONST. art. III, § 2; *Diamond v. Charles*, 476 U.S. 54, 61-62 (1986).

The Supreme Court has set out the following three requirements as the "irreducible minimum" that must be present before a party may invoke the jurisdiction of a court:

1. The party "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,"

2. The injury can be "fairly traced to the challenged action," and

3. The injury is "likely to be redressed by a favorable decision."

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 41 (1976); *Allen v. Wright*, 468 U.S. 737, 766, (1984); *Secretary of State v. Joseph H. Munson Co.,* 467 U.S. 947, 104 (1984)*; Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 160 (1981).

The alleged "injury-in-fact" must be "direct," "imminent," and "concrete" to the allegedly aggrieved person.  *Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130, 2136-46 (S. Ct.  1992)

(plaintiffs did not allege sufficiently "imminent injury" to have standing; case dismissed for lack of subject matter jurisdiction).

WHEP lacks standing to sue Ms. Larsen for breach of contract, because no "distinct and palpable injury" can be traced to it. *Berg v. State*, 100 P.3d 261, 266 (Utah App. 2004) (case dismissed for lack of standing where plaintiff could show no distinct and palpable injury proximately caused by defendant). Moreover, WHEP lacks direct, concrete or imminent injury, because the alleged post does not mention WHEP or Wild Horses and was posted for a short time nearly a year after the film was made and permanently removed over two months before CCI was asserted. *Lujan*, 112 S. Ct. 2130, 2136-46; *see also*, *Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590, *passim* (10th Cir. 1996) (complaint dismissed for lack of concrete injury and thus lack of subject matter jurisdiction).

CCI would be subject to dismissal for lack of standing and thus lack of subject matter jurisdiction.

**2.      WHEP's lack of standing deprives this Court of subject matter jurisdiction and requires CCI's dismissal.**

"If the court lacks either [personal or subject matter] jurisdiction, it has no power to entertain the suit." *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 (1969). "[S]ubject matter jurisdiction goes to the very power of a court to entertain an action." *Id.* "A lack of subject matter jurisdiction cannot be stipulated around nor cured by a waiver." *Id.* "A lack of subject matter jurisdiction can be raised at any time and when subject

matter jurisdiction does not exist, neither the parties nor the court can do anything to fill that void." *Id.*

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. *passim* (1998), is the Supreme Court's landmark case definitively mandating that trial courts first decide challenges to subject matter jurisdiction before taking even one more step in a case. Reversing the Seventh Circuit, the *Steel* Court decried lower courts' habit of assuming "hypothetical jurisdiction" to decide merits or other issues before deciding subject matter jurisdiction, calling the practice an unconstitutional violation of "fundamental principles of separation of powers." *Id.* at 93, 94. The Supreme Court unequivocally holds that, without jurisdiction, a court has authority to do nothing but announce the jurisdictional defect and dismiss the case:

> **Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause** . . . . The requirement that jurisdiction be established as threshold matter springs from the nature and limits of judicial power of the United States and is **inflexible and without exception.**

*Id.* at 94 (quotations and citations omitted; emphasis added). The *Steel* Court vacated the judgment and remanded with instructions to direct that the complaint be dismissed. *Id.* at 110; *Wilson*, 98 F.3d 590, *passim* (10th Cir. 1996) (lack of standing mandates dismissal for lack of subject matter jurisdiction).

Utah Supreme Court law follows *Steel*. In *Ramsay v. Kane County Human Resource Special Service District*, 322 P.3d 1163, 1169 (Utah 2014), the Supreme Court held that, after deciding it lacked subject matter jurisdiction, it could not "reach the merits" of any other arguments. "[W]hen a court determines it lacks subject matter jurisdiction, it 'retains only the

authority to dismiss the action.'" *Id*. (reinstated district court's dismissal for lack of subject matter jurisdiction).

CCI should not be allowed, because the Court lacks subject matter jurisdiction over it.

**B.     CCI Improperly Seeks Equitable Relief as a Remedy for Breach of Contract.**

CCI improperly seeks the equitable remedy of "disgorgement of profits," which is not a breach of contract remedy in this instance. WHEP's failing to allege contractual damages allegedly flowing from an alleged breach of the Location Agreement underscores that it was not injured by the alleged breach and therefore lacks standing to sue under CCI. *Lujan v. Defenders of Wildlife*, 112 S. Ct. at 2136-46.

 Disgorgement is an extraordinary remedy that goes beyond a plaintiff's damages, requiring the breaching party to refund additional profits gained in the breach. See 3 D. Dobbs, *Law of Remedies* § 12.7(3), pp. 166–167 (2d ed. 1993). In American law, disgorgement of profits is not generally an available remedy for breach of contract. *Id*., § 12.7(4), at 171.

"Where an enforceable express contract governs the parties' relationship," equitable remedies are not available. *See Member Services Life Insurance Co. v. American National Bank and Trust Co.*, 130 F.3d 950, 957–58 (10th Cir.1997).

In *Trugreen Companies, L.L.C. v. Mower Brothers, Inc*., 199 P.3d 929, 934 (Utah 2008), the Supreme Court held that an equitable remedy — such as an accounting for profits — is not available for breach of contract which must allege legal damages. Citing *American Air Filter Co. v. McNichol*, 527 F.2d 1297, 1300 (3d Cir.1975), *Trugreen,* 199 P.3d at 934, holds that, in a

breach of contract context, an equitable remedy is not a substitute for legal damages. *Trugreen*, *id.*, quotes *American Air Filter*'s reasoning:

> The basic failing of the plaintiff's theory is that the defendant's profits are not necessarily equivalent to the plaintiff's losses. The defendant's profit margin may be higher than plaintiff's for any number of reasons—e.g., product more efficiently made or distributed. To compel defendant to disgorge these profits could give plaintiff a windfall and penalize the defendant, neither of which serves the purpose of contract damages. *Id*.
> When an efficient breach occurs, a breaching party may retain its profits in excess of a plaintiff's losses as long as the plaintiff is made whole. As was stated in *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1289 (7th Cir.1985), such a standard is beneficial to both parties because the nonbreaching party receives what it bargained for and the breaching party is able to retain its profits made through its more efficient business practices.

*American Air Filter*, 527 F.2d at1300.

CCI would be subject to dismissal for seeking an unavailable remedy to a breach of contract claim. The fact that WHEP would bring such a claim over a maximum of $500.00 for the Prop it abandoned demonstrates CCI is an impermissible "strike suit" defined as "claims brought not to redress real wrongs, but to take advantage of their nuisance or in terrorem value." 2A *Moore's Federal Practice* § 9.03[1] (2d ed. 1987).

In any event, WHEP left RRLLC with a nearly $1,000 injury and no profits to disgorge. Allowing CCI would be futile since it would subject to dismissal.

      **C.**    **The Utah Revised Limited Liability Act Precludes Suit against Ms. Larsen**

WHEP sued Tamara Larsen in her individual capacity, when she merely posted in her capacity as member of RRLLC and is thus protected from liability under the Utah Revised Limited Liability Act, 48-3a-304. (Larsen Dec., Ex. B) RRLLC suffered the injury and damages

arising from the abandoned hazard and is the entity that attempted to rid itself of the shambles. (Larsen Dec.)

The claim is frivolous on its face, and, in any event, barred by Section 48-3a-304, "Liability of Members and Managers," which provides:

> (1) A debt, obligation, or other liability of a limited liability company is solely the debt, obligation, or other liability of the limited liability company. A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the limited liability company solely by reason of being or acting as a member or manager. This Subsection (1) applies regardless of the dissolution of the limited liability company.
>
> (2) The failure of a limited liability company to observe formalities relating to the exercise of its powers or management of its activities and affairs is not a ground for imposing liability on a member or manager of the limited liability company for a debt, obligation, or other liability of the limited liability company.

"A company formed under this chapter is a legal entity distinct from its members." Section § 48–2c–104 [predecessor to Section 48-3a-304].

The Prop was located on RRLLC's real property, and Ms. Larsen's membership interest in the company does not give her a personal interest in any structures located on it. The nature of a member's interest in an LLC is "personal property regardless of the nature of the property owned by the company" and "[a] member has no interest in specific property of a company." *CFD Payson, LLC v. Christensen*, 361 P.3d 145,  (Utah Ct. App. 2015) (quoting Utah Code Ann. §§ 48–2c–701(1), –701(2)), both of which were effective as numbered in July - August 2015 when the alleged post was made). A membership interest in an LLC therefore does not give the member any interest in the real property owned by the company. *See, e.g.*, *In re McCauley*, 520 B.R. 874,

882 (Bankr. D. Utah 2014) (concluding that, under Utah law, membership interest in LLC did not give debtor or his wife any interest in LLC's real property).

Consequently, CCI against Ms. Larsen is barred as a matter of law. *Holmes Development, LLC v. CookEyeglasses*, 48 P.3d 895, 905 & n.5 (Utah 2002) (Utah law proscribes direct action against limited liability member acting in company's behalf); *Dygert v. Collier*, 2004 WL 253554, *1 (Utah Ct. App. Feb. 12, 2004) (affirmed dismissal of claims against individual members of limited liability company).

Allowing leave to amend to maintain CCI would be futile, because it would be subject to dismissal under Section 48-3a-304.

## CONCLUSION

The plaintiffs respectfully request that insofar as the motion seeks allowance of CCI, the Court deny the motion for leave to amend, because the unregistered WHEP is prohibited from bringing suit and, in any event, amendment allowing CCI would be futile, because the claim would be subject to dismissal, including for lack of subject matter jurisdiction.

DATED this 31st day of May 2016.

Respectively submitted,

SHIELDS LAW FIRM, P.C.


/s/ Joann Shields
_____
JOANN SHIELDS

*Attorneys for Plaintiffs Tamara Rae Larsen
and Riverbend Ranch Equestrian Center, LLC*