JENNIFER L. FALK (#4568)
STEVEN G. LOOSLE (#4874)
KRUSE LANDA MAYCOCK & RICKS, LLC
136 East South Temple, Suite 2100
P. O. Box 45561
Salt Lake City, Utah 84145-0561
Telephone:  (801) 531-7090
Facsimile:  (801) 531-7091
Email:  JFalk@klmrlaw.com
Email:  SLoosle@klmrlaw.com

KELLI L. SAGER (pro hac vice)
DIANA PALACIOS (pro hac vice)
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone:  (213) 633-6800
Facsimile:  (213) 633-6899
Email:  kellisager@dwt.com
Email:  dianapalacios@dwt.com

Attorneys for Defendants Robert Duvall,
Robert Carliner, and Wild Horses Productions
Entertainment LLC

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| RIVERBEND RANCH EQUESTRIAN CENTER LLC, a Utah Limited Liability Company; and TAMARA RAE LARSEN, an Individual,<br><br>　　　　　　　　　Plaintiffs,<br>　　vs.<br><br>ROBERT DUVALL, an individual; ROBERT CARLINER, an individual; WILD HORSES PRODUCTIONS ENTERTAINMENT LLC, a Canceled California Limited Liability Company; and JOHN DOE DEFENDANTS I - XX,<br><br>　　　　　　　　　Defendants. | Case No. 15-cv-00751-JNP-EJF<br><br>**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM BY DEFENDANT WILD HORSES PRODUCTIONS ENTERTAINMENT LLC** |
| AND RELATED COUNTERCLAIM | |

## I.   SUMMARY OF ARGUMENT

Wild Horses Productions Entertainment LLC's ("WHPE")[1] Motion for Leave to Amend easily satisfies the permissive standard of F.R.C.P. 15.  Plaintiffs tacitly admit that WHPE's proposed amendments do not prejudice them in any way; they also effectively concede that WPHE did not delay in making its request, and is not seeking to amend in bad faith.

Nonetheless, Plaintiffs oppose the Motion, arguing solely that WHPE's proposed amendment to add Riverbend Ranch Equestrian Center LLC ("Riverbend Ranch") as a counter-defendant is "futile" – ignoring the fact that the counterclaim already was alleged, <u>without challenge</u>, against Plaintiff Tamara Larsen.[2]  The proposed amendment is sought because Plaintiffs' Answer to the original Counterclaim asserts that Larsen's conduct that is alleged to have breached the parties' Location Agreement was done as a member of Riverbend Ranch, and not individually.  Dkt. # 11 at 12; Dkt. # 13 at 20.

<u>None</u> of the arguments raised in Plaintiffs' Opposition are directed at this simple amendment.  Instead, Plaintiffs raise a bevy of arguments directed to the merits of the underlying counterclaim.  This thinly-disguised attempt to seek summary judgment, in the guise of an opposition to a straightforward motion to amend, should be rejected.  Plaintiffs' "futility" arguments are inappropriate at this early stage of the lawsuit, and are wholly unfounded.  This Court should apply F.R.C.P. 15's liberal policy in favor of permitting leave to amend, and grant WHPE's Motion in its entirety.

## II.   PLAINTIFF PROVIDES NO BASIS FOR DEVIATING FROM THE RULE 15 POLICY OF LIBERALLY PERMITTING AMENDMENT TO PLEADINGS.

---

[1] Plaintiffs inexplicably refer to Defendant Wild Horses Productions Entertainment LLC as "Wild Horses Entertainment Productions" or "WHEP"; neither is correct.

[2] Plaintiffs have consented to the dismissal of the second counterclaim. Opp. at ii.

1

Plaintiffs do not dispute that leave to amend under F.R.C.P. 15 should be "freely given" in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance, [or] futility of amendment." Prop. Sols. International, Inc. v. Yardi Sys., Inc., 2016 WL 1411357, at *1 (D. Utah Apr. 8, 2016) (citation omitted) (unpublished).[3]  Plaintiffs do not claim that WHPE's Motion is untimely, in bad faith, or brought with a dilatory motive; nor do they assert that WHPE's proposed amendments will cause them undue prejudice, which is the "most important" factor "in deciding a motion to amend the pleadings." Minter v. Prime Equipment Co, 451 F.3d 1196, 1207 (10th Cir. 2006).

Instead, Plaintiffs' sole argument is that leave to amend should be denied because the claim alleged is purportedly "futile." Opp. at 1-10.  Notably, the same counterclaim already was alleged against Larsen, who filed an answer (and an amended answer) without challenging the legal sufficiency of the claim.  See Mot. at 6; see Countercl., Dkt. # 10; see also Dkt. ## 11, 13. In its Proposed Amended Counterclaim, WHPE proposes to add Riverbend Ranch as a counter-defendant, based on Plaintiffs' allegation in an affirmative defense that Larsen "acted within the scope of her capacity as member of Riverbend Ranch Equestrian Center, LLC, and not individually." Dkt. # 13, at 20.  Given Larsen's effective concession that the counterclaim was sufficiently pleaded, and her allegation that she was acting on behalf of Riverbend Ranch, Plaintiffs' refusal to stipulate to the proposed amendment to add Riverbend Ranch as a counterdefendant borders on bad faith.

Plaintiffs' newly-minted "futility" argument should be rejected on its face.  Under the permissive standard of Rule 15, parties are not obliged to prove their case at the pleading stage.

---

[3] In their Opposition, Plaintiffs attempt to cast dispersions on WHPE's citations in support of granting leave to amend by noting that in some of the cases leave to amend was denied. See Mot. at 4-6.  However, in doing so, Plaintiffs miss the point.  Those cases were cited to set forth the applicable law; propositions of law Plaintiffs do not and cannot dispute.  Id.

2

See ClearOne Commc'ns, Inc. v. Chiang, 2007 WL 2572380, at *1 (D. Utah Sept. 5, 2007) (unpublished).  Although courts may consider the "futility of amendment" when considering whether to grant leave to amend, "the doctrine [of futility] is meant to apply in cases where a party clearly cannot state a claim.  Usually, the doctrine is raised when a party is attempting amendment to prevent dismissal or summary judgment."  Id. (emphasis added); see also Prop. Sols. International, 2016 WL 1411357, at *1 ("[a] proposed amendment is futile only where 'it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile'") (original emphasis; citation omitted).

For example, in ClearOne Commc'ns., 2007 WL 2572380, at *1, the court rejected the defendant's futility arguments and granted leave to amend on the ground that "[j]urisdictional issues are more properly raised in a motion to dismiss where full briefing is allowed rather than in the motion to amend."  As the court explained, "[b]ecause the doctrine of futility bars a claim even before it is filed, cases make it clear that the merits of the complaint are examined only in a limited manner on a motion to amend – which is not a motion to dismiss or motion for summary judgment."  Id. (citations omitted; emphasis added).  "A futility objection should not turn into a mini-trial or summary judgment proceeding, without the safeguards normally present for maturation and merits-based resolution of claims."  Id.

Similarly, in Prop. Sols. International, 2016 WL 1411357, at *1-2, the court chose not to address the defendant's futility arguments, finding that addressing the merits "neglected the liberal standard applied to both motions to amend and to pleadings themselves."  Instead, the court granted leave to amend, noting that the case was in its "infancy":  the parties had not yet even participated in a Rule 26(f) meeting, exchanged initial disclosures, or propounded any

3

discovery; moreover, the defendant had not asserted how it would suffer any prejudice as a result of granting leave to amend.  Id.  The same circumstances apply here.

This Court should reject Plaintiffs' effort to turn a straightforward motion to amend into "a mini-trial or summary judgment proceeding."  ClearOne Commcns., 2007 WL 2572380, at *1.  This matter is in its "infancy"; Rule 26 disclosures have not been made, no discovery has been conducted, and no scheduling conference has been held.  Plaintiffs' Opposition purports to refer to extraneous evidence, and is replete with factual assertion that are disputed, and which cannot be properly addressed at this early stage.[4]  Plaintiffs' attempt to prematurely litigate factual disputes in response to a motion to amend is improper, and should be rejected.[5]

### III.     THE PROPOSED AMENDED COUNTERCLAIM IS WELL-PLEADED.

For the reasons set forth above, this Court should not address the ultimate "merits" of WHPE's counterclaim at this stage of the proceedings.  But even if the Court considers the purported "futility" arguments made by Plaintiffs, it should find that WHPE has sufficiently pleaded a breach of contract claim, and the motion to amend should be granted.

---

[4] To accept Plaintiffs' arguments, this Court would have to resolve numerous factual issues, including whether WHPE entered into other contracts within the State of Utah (Opp. at iii ¶ 6); whether WHPE conducted business in Utah within the meaning of certain statutory provisions (id. ¶ 9); whether Plaintiffs' attempt to sell the shed by connecting it to the Film was successful (id. ¶ 12); whether the advertisements placed by Plaintiffs sufficiently reference the Film to constitute a violation of the parties' Agreement (id. ¶ 13); whether WHPE suffered damages from Plaintiffs' breach (id. ¶ 13); and whether Larsen posted the two improper advertisements as Riverbend Ranch's member or as an individual (id. ¶¶ 17-18).  Further, WHPE strenuously disputes the veracity of Plaintiffs' purported recitation of the "facts."

[5] Plaintiffs' reliance on Jefferson County School District R-1 v. Moody's Investor's Services, Inc., 175 F.3d 848 (10th Cir. 1999) and TV Communications Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992) is misplaced.  The procedural posture of these cases is quite different and therefore compelled a different result.  In those cases, the operative complaint had been dismissed and the plaintiff was seeking leave to amend cure deficiencies in the complaint.  Given this procedural situation, the court converted the motions to amend into 12(b)(6) motions and for that reason considered the ultimate question of whether a claim could be made.  In stark contrast here, there has been no prior finding that the counterclaim fails to state a claim.

**A.      WHPE Is Not Barred From Bringing A Counterclaim In This Action.**

Plaintiffs assert that WHPE cannot prosecute a Counterclaim in this Court, because it allegedly did not "register" to do business in Utah. Opp. at 2. This argument relies on the fallacy that WHPE was required to register, which WHPE disputes. In any event, Plaintiffs' assertion raises factual issues that are inappropriate for resolution at this stage.

Utah Code Ann. § 48-3a-902(2) prohibits a "foreign limited liability company doing business in this state" from maintaining an action in this state, but the statute does not expressly define what it means for an entity to be "doing business" in the State. It makes clear, however, that not <u>all</u> business activities give rise to the registration requirement: Utah Code Ann. § 48-3a-905 provides examples of activities that do <u>not</u> constitute doing business, including "isolated transaction[s]" and conduct that constitutes "doing business in interstate commerce." As the Utah Supreme Court has explained, in interpreting an analogous statute with similar language, "to be 'doing business' in a state, a corporation must be engaged in a <u>continuing course of business</u>, rather than a few isolated transactions, whether those transactions are within the usual scope of that corporation's business or not. There must be at least some <u>permanence</u> about the presence and business transactions of the corporation within the state." <u>Marchant v. Nat'l Reserve Co. of Am.</u>, 103 Utah 530, 137 P.2d 331, 338 (1943) (emphasis added). Whether an entity is deemed to be "doing business" within the meaning of the law is a factual question; "there is no precise test of the nature or extent of the business that must be done" to constitute "doing business." <u>Id.</u> at 337. Instead, "each case must depend upon its own facts." <u>Id.</u>

Here, WHPE's filming of "Wild Horses" was an isolated transaction, and WHPE's presence in Utah was not permanent. <u>See</u> Am. Counterclaim ¶ 6. Plaintiffs do not suggest otherwise; instead, they make the conclusory assertion that WHPE "transacted business in the State of Utah by entering the subject Location Agreement and Settlement Agreement," and assert

5

"[o]n information and belief" that WHPE entered into other agreements concerning the filming of "Wild Horses." Opp. at iii.

But entering into an agreement is not, by itself, sufficient to constitute "doing business" in Utah. For example, in Thorp Fin. Corp. v. Wright, the court held that a foreign corporation, which had no office or agents in Utah, was not "doing business" in Utah when it accepted an assignment of contracts for the sale of dwelling units located in the state. 16 Utah 2d 267, 268 (1965) (construing analogous statute). See also Overseas Media, Inc. v. Skvortsov, 277 F.App'x 92, 95 (2d Cir. 2008) (filming in New York was not "doing business" for jurisdictional purposes where entity had no in-state offices, bank accounts, employees, property, or mailing address).

Plaintiffs' reliance on Horton v. Richards, 594 P.2d 891, 893 (Utah 1979) is misplaced. In that case, the plaintiff was a foreign corporation that instructed the defendant, a Utah resident, in financial adjustment; it maintained an office and bank accounts in Utah; its president "held himself out to be president of the Utah operation"; and it maintained records in Utah. Id. Based on these facts, the court held that the plaintiff was "doing business" in Utah. Id. But none of those facts exist here. Moreover, film companies routinely conduct filming within the State of Utah – with the State's blessing – without being subjected to onerous registration requirements.

Under these circumstances, Plaintiffs have not established that WHPE was "doing business" in Utah within the meaning of Utah Code Ann. § 48-3a-902. In any event, to the extent this is in dispute, it poses a factual question that cannot and should not be decided at this stage. See ClearOne Commc'ns, 2007 WL 2572380, at *1.

**B.  WHPE Has Article III Standing To Bring The Counterclaim.**

To assert standing under Article III, a party must show an "injury in fact" that is "fairly traceable" to the acts of the opposing party and likely to be redressed by a favorable decision. City Of Albuquerque v. U.S. Dep't Of Interior, 379 F.3d 901, 912 (10th Cir. 2004). An injury in

fact is "an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical." United States v. Colorado Supreme Court, 87 F.3d 1161, 1164 (10th Cir. 1996). "At the pleading stage, general factual allegation of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." Id.

WHPE easily meets this requirement. WHPE has alleged that Plaintiffs violated a valid and binding Location Agreement with WHPE, by posting advertisements connected with the Film without consent. Am. Compl. ¶¶ 6-7, 16-17. WHPE also has alleged that "[a]s a direct and proximate result of Plaintiffs' breach, WHPE has been and will continue to be damaged in an amount to be ascertained at trial." Id. ¶ 18. At this stage, WHPE's allegations are sufficient to state a claim and to establish standing. See Aurora Commercial Corp. v. PMAC Lending Servs., Inc., 2014 WL 859253, at *4 (D. Colo. Mar. 5, 2014) ("[b]ecause a contract existed and Plaintiff contends that contract was breached, these claims are adequate to establish an injury and causation sufficient to demonstrate that Plaintiff has standing.") (unpublished); Abraham v. WPX Prod. Prods., LLC, 2016 WL 3135647, at *33 (D.N.M. Apr. 25, 2016) (allegations that the defendants' actions caused plaintiff's injury and the court could redress this injury through a damages award sufficient for Article III standing) (unpublished).[6]

Plaintiffs' remaining arguments are premature. Whether the two classified

---

[6] Berg v. State, 100 P.3d 261 (Utah App. 2004) and Wilson v. Glenwood Intermountain Properties, Inc., 98 F.3d 590, 594 (10th Cir. 1996), on which Plaintiffs rely, are distinguishable. In Berg, the plaintiff brought a declaratory relief claim questioning the constitutionality of a sodomy statute. 100 P.3d at 264. The court dismissed the claim because the attorney general had agreed not to prosecute the plaintiff; therefore the plaintiff could not show any injury. Id. at 266. In Wilson, 98 F.3d at 594, the court found that the plaintiffs did not have standing to bring a discrimination claim because they were not students, and therefore could not challenge the University's housing policies. Neither case involved a motion to amend, and neither addressed standing where a party alleged injury from a contractual breach.

advertisements violated the Agreement by "referencing" the Film,[7] and whether the breach caused damage (Opp. at 5), are factual issues that cannot be resolved at this stage. See GRB Enterprises LLC v. JPMorgan Chase Bank, N.A., 2012 WL 845418, at *6 (D. Utah Mar. 12, 2012) (denying motion to dismiss on the ground that "there are too many factual disputes to rule on the breach of contract cause of action at this stage of the litigation") (unpublished); Cook v. Zions First Nat. Bank, 645 F. Supp. 423, 424 (D. Utah 1986) (denying motion to dismiss contract claim because "several questions of fact need to be addressed in connection with the breach of contract claims, such as . . . whether plaintiffs were damaged by the breach").

Finally, because WHPE has standing to bring its Amended Counterclaim, this Court has subject matter jurisdiction.[8] See Pac. Enterprises Oil Co. v. Hertz, 893 F.2d 280, 282 (10th Cir. 1990). In that case, the defendant counterclaimed for breach of a lease agreement. The plaintiff argued in its summary judgment motion that the court lacked subject matter jurisdiction because the defendant had not shown an injury in fact. Id. at 283. On appeal, the Tenth Circuit held that the defendant had adequately alleged an "actual or threatened" injury; therefore, "proper subject matter jurisdiction exists over this case." Id. Similarly, WHPE has standing to bring its claim, and this Court has subject matter jurisdiction over it.

## C.  Disgorgement of Profits Is An Appropriate Remedy.

---

[7] This assertion highlights the impropriety of Plaintiffs' Opposition. Plaintiffs admit that the advertisements at issue described the shed as used in a "Robert Duvall" film, but ask this Court to find that the ads did not violate the contractual prohibition against advertisements connected to the Film. This is not an appropriate stage for such a determination.

[8] Although Plaintiffs spend 1½ pages explaining basic principles of subject matter jurisdiction, the two cases they cite have no application to this case. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 124-25 (1998) (plaintiffs lacked standing because none of the relief sought would redress their alleged injury); Ramsay v. Kane Cty. Human Res. Special Serv. Dist., 322 P.3d 1163, 1169 (Utah 2014) (holding that court lacked subject matter jurisdiction because the plaintiffs failed to exhaust their administrative remedies). The monetary damages sought by WHPE would provide an adequate remedy, and there are no "administrative remedies" that need to be exhausted here.

Plaintiffs argue that disgorgement is not appropriate relief for a breach of contract claim, citing Utah and other states' laws, but ignore that the Location Agreement is governed by California law.  See Ex. A to Compl., ¶ 13.  Under California law, "courts have permitted disgorgement of improperly obtained profits as a remedy for breach of contract."  Young v. Wideawake Death Row Entm't, LLC, 2011 U.S. Dist. LEXIS 54631, at * 5-6 (C.D. Cal. May 16, 2011).  For example, in Young, the court permitted the plaintiffs to seek disgorgement of the defendant's profits for a breach of contract claim because "where actual damages are difficult to prove, disgorgement may be an appropriate remedy."  Id. at * 5-6; accord Ajaxo Inc. v. E*Trade Group Inc., 135 Cal. App. 4th 21, 57 (2005) (permitting disgorgement of profits for breach of a non-disclosure agreement).[9]

Similarly, WHPE should have an opportunity to seek disgorgement of any profits obtained by Plaintiffs, because damages from their breach may be difficult to prove.  Plaintiffs' contention that there were no "profits" is a factual issue, which cannot be resolved at this stage.  See ClearOne Commc'ns, 2007 WL 2572380 at *1.

**D.     Utah's Limited Liability Law Does Not Preclude WHPE's Claim.**

Plaintiffs' final argument has nothing whatsoever to do with the proposed amendment to add Riverbend Ranch as a counterdefendant.  Instead, despite having answered the counterclaim against her, Plaintiffs argue that WHPE's claims against Larsen are barred under Utah's Limited Liability Laws because she purportedly posted the advertisements in her capacity as a member of the Riverbend Ranch.  Larsen did not challenge the Counterclaim against her, on this or any ground; instead, she answered – effectively conceding that WHPE had sufficiently pleaded a

---

[9] The cases cited by Plaintiffs did not involve California law.  See Member Services Life Insurance Co. v. American National Bank and Trust Co., 130 F.3d 950, 957–58 (10th Cir.1997) (applying federal law under ERISA); American Air Filter Co. v. McNichol, 527 F.2d 1297, 1300 n. 4 (3d Cir.1975) (applying Kentucky and Pennsylvania law); TruGreen Companies, L.L.C. v. Mower Brothers, Inc., 199 P.3d 929, 934 (Utah 2008) (applying Utah law).

9

claim against her.

In any event, Utah Code Ann. § 48-3a-304 has no application here. Under that provision, "[a] member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the limited liability company solely by reason of being or acting as a member or manager." (Emphasis added.) Here, Larsen entered into the Location Agreement as an individual. See Location Agreement at 1 ("[WHPE] on the one hand, and [Larsen], individually, … on the other hand"). Consequently, her Agreement – and her conduct – do not fall within Section 304.

This fact distinguishes the instant case from the authorities cited by Plaintiffs. Holmes Dev., LLC v. Cook, 48 P.3d 895, 905 (2002) (limited liability member executed deed "in his capacity as the managing member of Cook Development."); Dygert v. Collier, 2004 WL 253554, *1 (Utah Ct. App. Feb. 12, 2004) ("[a]ll documents were signed by Appellees in their capacity as members of the LLC.").

Moreover, the alleged "ownership" of the shed is irrelevant to WHPE's Proposed Amended Counterclaim. WHPE's claim arises from Plaintiffs' conduct in attempting to trade off the Film to sell property; it is irrelevant which of them "owned" the property that was the subject of the improper ads.[10] See Am. Countercl. ¶ 17. Finally, whether Larsen posted the two advertisements as an individual or as a member of Riverbend Ranch is a question of fact that this Court cannot decide at this stage. See ClearOne Commc'ns, 2007 WL 2572380 at *1.

DATED: June 21, 2016

                By: */s/ Kelli L. Sager*
                     Kelli L. Sager, Attorneys for Defendants

---

[10] Neither of the cases Plaintiffs cite involved the situation here, where a party acted in her individual capacity. Both CFD Payson, LLC v. Christensen, 361 P.3d 145, 148 (Utah Ct. App. 2015) and In re McCauley, 520 B.R. 874, 882 (Bankr. D. Utah 2014), involved the nature of a member's interest in the LLC's real property, which is not at issue here.