IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RIVERBEND RANCH EQUESTRIAN CENTER LLC, a Utah Limited Liability Company; and TAMARA RAE LARSEN, an individual,<br><br>     Plaintiffs,<br><br>vs.<br><br>ROBERT DUVALL, an individual; ROBERT CARLINER, an individual; WILD HORSES PRODUCTIONS ENTERTAINMENT LLC, a Canceled California Limited Liability Company; and JOHN DOE DEFENDANTS I-XX,<br><br>     Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM (ECF NO. 14)** |
| WILD HORSES PRODUCTIONS ENTERTAINMENT LLC, a Delaware Limited Liability Company,<br><br>     Counterclaimant,<br><br>vs.<br><br>RIVERBEND RANCH EQUESTRIAN CENTER LLC, a Utah Limited Liability Company; and TAMARA RAE LARSEN, an individual,<br><br>     Counter-Defendants. | Civil No. 2:15-cv-00751-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

Defendant and Counterclaimant Wild Horses Productions Entertainment LLC ("Wild Horses") moves the Court for leave to amend its Counterclaim. (Mot. for Leave to File Am. Countercl. by Def. Wild Horses Prods. Entm't LLC ("Mot."), ECF No. 14.) Specifically, Wild

1

Horses seeks to add Riverbend Ranch Equestrian Center LLC ("Riverbend Ranch") as a Counterclaim-Defendant to its first counterclaim and dismiss its second counterclaim. (*Id.* at 1.) Having reviewed the parties' briefing and case record, due to the lack of opposition from the Riverbend Ranch and Tamara Rae Larsen (collectively the "Riverbend Plaintiffs"), the Court GRANTS Wild Horses' request to dismiss its second counterclaim. However, the Court DENIES Wild Horses' request to add Riverbend Ranch as a Counter-Defendant without prejudice because Wild Horses' Proposed Amended Counterclaim fails to plead a breach of contract claim adequately. Wild Horses may file a renewed motion to amend within fourteen (14) days of this Order that sufficiently pleads the elements of a breach of contract claim.

## FACTUAL AND PROCEDURAL HISTORY

On July 18, 2014, Wild Horses entered into the Location Agreement with the Riverbend Plaintiffs that allowed Wild Horses to use the Riverbend Ranch in connection with the production of the motion picture "Wild Horses." (Location Agreement, ECF No. 10-1.) On or about September 11, 2015, the Riverbend Plaintiffs filed a Complaint in the Utah Third District Court against Robert Duvall, Robert Carliner, Wild Horses, and John Doe Defendants I-XX (collectively, the "Duvall Defendants") for breach of the Location Agreement in connection with Wild Horses' alleged failure to include the Riverbend Plaintiffs' names in the movie's screen credits, breach of the implied covenant of Good Faith and Fair Dealing, Declaratory Judgment, and injunctive relief. (Compl., *Riverbend Ranch Equestrian Ctr. v. Duvall*, Utah 3d Dist. Ct., No. 150906533, ECF Nos. 2-2, 2-5.) On October 22, 2015, the Duvall Defendants removed the case to this Court based on diversity jurisdiction. (Notice of Removal 3-6, ECF No. 2.) On October 30, 2015, Wild Horses filed an Answer to the Complaint and alleged two counterclaims. (Answer of Def. Wild Horses Producs. Entm't LLC to Pls.' Compl. & Counterclaims Against Pls.

31-33, ECF No. 10.) The first counterclaim alleged breach of the Location Agreement by Ms. Larsen for allegedly posting advertisements to sell a prop used in the movie without Wild Horses' consent. (*Id.* at 31-32.) The second counterclaim alleged breach of the Location Agreement against both Riverbend Plaintiffs for interference with Wild Horses' filming and full use of the Riverbend Ranch. (*Id.* at 32.) The Riverbend Plaintiffs filed an Answer to Wild Horses' counterclaims on December 14, 2015, and an Amended Answer on December 22, 2015. (ECF Nos. 11, 13.) On May 4, 2016, Wild Horses filed the instant Motion to Amend seeking to add Riverbend Ranch as a Counterclaim-Defendant to its first counterclaim and dismiss its second counterclaim. (Mot. 1, ECF No. 14.)

## DISCUSSION

Wild Horses may amend its pleading with the Court's leave, which the Court should freely give when justice requires. Fed. R. Civ. P. 15(a)(2). "[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). Nonetheless,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

While the Riverbend Plaintiffs do not oppose Wild Horses' request to dismiss its second counterclaim, they oppose Wild Horses' request to amend its first counterclaim to add Riverbend Ranch as a Counterclaim-Defendant on the basis that the amendment would prove futile. (Pls.' Mem. in Opp'n to Mot. for Leave to File Am. Countercl. by Def. Wild Horses Prods. Entm't LLC ("Opp'n") ii, ECF No. 20.) Whether a proposed amendment would prove futile poses the

3

same question as whether a court must dismiss a pleading for failure to state a claim.  *See Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) (noting standard in context of a motion to amend a complaint).  The Riverbend Plaintiffs argue that because Wild Horses never registered to do business in Utah, Utah statutes prohibit it from bringing suit in the state.  (Opp'n. 1-2, ECF No. 20.)  Furthermore, even if Wild Horses could bring suit, the Riverbend Plaintiffs argue Wild Horses' proposed amendment would still prove futile because Wild Horses lacks standing to bring the Proposed Amended Counterclaim, Wild Horses improperly seeks the equitable remedy of disgorgement of profits for a breach of contract claim, and the Utah Revised Limited Liability Act precludes suits against Ms. Larsen.  (*Id.* at 3-10.)

A. **Federal Rules, not State Law, Govern Whether Wild Horses May Bring Its Proposed Amended Counterclaim**

The Riverbend Plaintiffs argue that Utah Code section 48-3a-902(2) prohibits Wild Horses from filing a counterclaim because it provides:  "[a] foreign limited liability company doing business in this state may not maintain an action or proceeding in this state unless is it registered to do business in this state."  (Opp'n 2, ECF No. 20.)  According to the Riverbend Plaintiffs, Wild Horses did business in Utah without registering, still has not registered, and therefore cannot bring its counterclaim.  *Id.*  Wild Horses disputes that its conduct constituted "doing business."  (Reply in Supp. of Mot. for Leave to File Am. Countercl. by Def. Wild Horses Prods. Entm't LLC ("Reply") 5, ECF No. 21.)

The Court agrees with the Riverbend Plaintiffs that "a federal court sitting in diversity must apply the substantive law of the state in which it sits."  *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495-97 (1941)).  However, the Federal Rules of Civil Procedure (the "Rules") also bind the Court.  These Rules, propagated by the Supreme Court to "prescribe general rules

4

of practice and procedure … in the United States district courts," control federal procedure so long as they "do not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072 ("Rules Enabling Act"). Thus the Court must "apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

The language of the Rules Enabling Act guides the choice between federal rules adopted pursuant to the Act and state law. *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217–18 (10th Cir. 2011); *see also Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398 (2010) ("We do not wade into *Erie's* murky waters unless the federal rule is inapplicable or invalid."). The Tenth Circuit relies on the recent Supreme Court case *Shady Grove*, specifically Justice Stevens' concurrence, to determine whether federal rule or state law governs. *James River*, 658 F.3d at 1217–18 (citing *Shady Grove,* 559 U.S. at 421-22 (Stevens, J., concurring)). The Tenth Circuit outlined the controlling Stevens' framework as follows:

> First, the diversity court "determine[s] whether the scope of the federal rule is sufficiently broad to control the issue before the court, thereby leaving no room for the operation of seemingly conflicting state law." *Shady Grove,* [559 U.S. at 421] (quotations omitted). "In some instances, the plain meaning of a federal rule will not come into direct collision with the state law, and both can operate." *Id.* (quotations omitted). In other words, the first step is to determine whether the federal rule and state law conflict.
>
> Second, if applying the federal rule and state law results in a "direct collision, the court must decide whether application of the federal rule represents a valid exercise of the rulemaking authority ... [under] the Rules Enabling Act." *Id.* (quotations and citation omitted). "That Act requires, *inter alia,* that federal rules 'not abridge, enlarge or modify *any* substantive right.'" *Id.* (quoting the Rules Enabling Act, 28 U.S.C. § 2072(b)).

658 F.3d at 1218 (alterations in original). To survive the second inquiry, a valid federal rule regulates procedure. In other words, the rule must concern "'the judicial process for enforcing

5

rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.'" *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1206 (10th Cir. 2012) (quoting *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14 (1941)).  The Court looks to the purpose of the Federal Rule.  *Id.*  By contrast, "the purpose of the state law, even if substantive, is immaterial to [the] analysis." *Id.*  Additionally, application of the Federal Rule may have some effect on the outcome of litigation and still constitute a valid procedural rule.  *Id.* ("To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act.") (quoting *Hanna,* 380 U.S. at 473–474)).

      Turning to the first question, the Court concludes that a conflict exists between a federal rule and state law.  Under Utah Code section 48-3a-902(2), a limited liability company doing business in Utah may not bring a counterclaim without first registering with the State of Utah.  Rule 13(a), on the other hand, requires defendants to bring counterclaims, "aris[ing] out of the transaction or occurrence that is the subject matter of the opposing party's claim," in the same federal suit.  Under Rule 13, a party who does not bring a mandatory counterclaim initially may not institute a second action on the basis of such a claim.  *Doelle v. Mountain States Tel. & Tel.,* 872 F.2d 942, 946 (10th Cir. 1989) ("[I]f the defendant were not permitted to counterclaim at this point, the counterclaim might be waived.").  These laws cannot apply simultaneously to the same transaction or occurrence.  Rule 13 requires Wild Horses to bring the claim now or abandon it, while Utah Code section 48-3a-902(2) prohibits Wild Horses from raising its counterclaim in this state.  Furthermore, nothing in state statute would stop Wild Horses from registering and then bringing a second action or bringing the separate action in a different state.

Turning to the second stage of the inquiry, Rule 13(a) represents a valid exercise of authority under the Rules Enabling Act. *James River*, 658 F.3d at 1218.  Rule 13 dictates when a party must plead a counterclaim.  The Rule aims to conserve public and private resources by consolidating causes of actions that rely on common facts into the same proceeding.  Rule 13 neither cares about nor contemplates the merits of the claims, rather it concerns "the judicial process for enforcing rights and duties recognized by substantive law."  See *Sibbach,* 312 U.S. at 14.  While Rule 13 does alter "the mode of enforcing state-created rights," the effect remains slight.  See *Jones*, 674 F.3d at 1206.  Applying Rule 13 instead of Utah Code section 48-3a-902(2) simply means Wild Horses need not register as a business in Utah before attaching its counterclaim to the present action.  Thus, Rule 13 constitutes a valid exercise of authority under the Rules Enabling Act.

In determining whether or not Wild Horses may attach its counterclaim to the present litigation, the Court will follow the procedure laid out by Rule 13(a).  While Utah Code section 48-3a-902(2) would bar the counterclaim, the Utah law conflicts with a federal rule.  That federal rule reflects a valid exercise of congressional authority under the Rules Enabling Act and dictates procedure in the present case.  *James River*, 658 F.3d at 1218 (citing *Shady Grove,* 559 U.S. 416-36 (Stevens, J., concurring)).

B.  **Wild Horses' Proposed Amended Counterclaim Fails to Plead the Elements for Breach of Contract Adequately.**

Section 13 of the Location Agreement states the Agreement "shall be governed and construed according to the laws of the State of California in all respects, including matters of construction, validity, enforcement and interpretation." (Location Agreement § 13, ECF No. 10-1.)  "Absent special circumstances, courts usually honor the parties' choice of law."  *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1121 (10th Cir. 1999).  Because

the Riverbend Plaintiffs do not allege any special circumstances for departing from this choice of law provision, the Court will apply California law to Wild Horses' Proposed Amended Counterclaim.

To state a claim for breach of contract under California law, a party must allege (1) the existence of a contract, (2) the non-breaching party's performance or excuse for nonperformance, (3) the breaching party's breach, and (4) the resulting damages to the non-breaching party. *Oasis West Realty, LLC* v. *Goldman,* 250 P. 3d 1115, 1121 (Cal. 2011). Rule 8 requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which the Supreme Court interprets as containing "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying the motion to dismiss standard, courts must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cty. of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996)).

Here, Wild Horses proposes to allege that "Plaintiffs entered into a valid and binding Location Agreement with [Wild Horses]," "Plaintiffs breached the Location Agreement by posting advertisements in connection with the Film without [Wild Horses'] consent," "[a]s a direct and proximate result of Plaintiffs' breach, [Wild Horses] has been and will continue to be damaged in an amount to be ascertained at trial," and "[Wild Horses] is entitled to disgorgement of all profits obtained by Plaintiffs from advertising property by referencing the Film." ([Proposed] Am. Countercl. Against Pls. of Def. Wild Horses Prods. Entm't LLC to Pls.' Compl. ("Proposed Am. Countercl.") ¶¶ 16-19, ECF No. 14-1.)

The Riverbend Plaintiffs take issue with Wild Horses' allegations of damages. (Opp'n 3-8, ECF No. 20.)  The Riverbend Plaintiffs contend that because they never sold the movie prop, and in fact paid $970 to have the prop removed, Wild Horses "suffered no Article III injury and incurred no damages"; thus, Wild Horses lacks standing to sue the Riverbend Plaintiffs for breach of contract. (*Id.* at 4-5.)  Of course, these alleged facts have no relevance when considering the futility of an amendment, since they do not appear in the Proposed Amended Counterclaim.  *See Alvarado,* 493 F.3d at 1215 (requiring court to accept well-pled allegations as true).  Nevertheless, Wild Horses' Proposed Amended Counterclaim fails to allege sufficient facts concerning the damages element of a breach of contract claim to survive a motion to dismiss.

While Wild Horses proposes to allege the Riverbend Plaintiffs' breach constituted a "direct and proximate cause" of its injury and damages, nowhere in the Proposed Amended Counterclaim does Wild Horses explain *how* it incurred damages from the Riverbend Plaintiffs' alleged breach or of what those damages might consist.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555).  Thus, the Court concludes Wild Horses' Proposed Amended Counterclaim fails to plead sufficient facts regarding the damages element of its breach of contract claim.  *See Orcilla v. Big Sur, Inc.*, 198 Cal. Rptr. 3d 715, 733-34 (Cal. Ct. App. 2016) (upholding trial court's grant of demurrer as to breach of contract claim because plaintiffs failed to allege how bank defendants' breach of deed of trust caused their alleged damages).

Additionally, Wild Horses' Proposed Amended Counterclaim also contains no allegation that Wild Horses performed under the Location Agreement or an excuse for nonperformance.

Thus, the Court holds Wild Horses also failed to plead the second element of a breach of contract claim adequately.  See *Hamilton v. Greenwich Inv'rs XXVI, LLC*, 126 Cal. Rptr. 3d 174, 183 (Cal. Ct. App. 2011) (upholding trial court's grant of defendants' demurrer in part because plaintiffs' complaint lacked any allegation that they performed under forbearance agreement or were excused from performing).

As to the Riverbend Plaintiffs' arguments concerning standing, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Because the pleading lacks sufficiency at this stage, the Court does not consider standing.

In addition, the Riverbend Plaintiffs argue that Wild Horses improperly seeks the equitable remedy of disgorgement of profits for a breach of contract claim.  (Opp'n 7-8, ECF No. 20.)  Wild Horses counters that under California law, courts permit disgorgement of profits as a remedy for breach.  (Reply 9, ECF No. 21.)  In *Ajaxo Inc. v. E*Trade Group, Inc.*, 37 Cal. Rptr. 3d 221 (Cal. Ct. App. 2005), a jury found the defendant liable for breach of a non-disclosure agreement and awarded the plaintiff $1.29 million.  *Id.* at 224-25.  On appeal, the court rejected the defendant's argument that the plaintiff failed to introduce evidence of legally recoverable contractual damages and upheld the $1.29 million jury verdict as restitutionary disgorgement. *Id.* at 248-49.  The court did acknowledge that the plaintiff could not have received non-restitutionary damages in the form of disgorgement of profits because that would put him in a better position than before the breach.  *Id.* at 248.  California has long prohibited any contract damages that would exceed the value of the contract if fully performed.  *See Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 102 P.3d 257, 261 (Cal. 2005).  Thus, this Court concludes California law allows Wild Horses to seek restitutionary disgorgement of profits as a

10

remedy for its breach of contract claim but not non-restitutionary disgorgement. Wild Horses' Proposed Amended Counterclaim lacks sufficient detail to determine which kind of disgorgement it seeks.

Lastly, the Riverbend Plaintiffs argue the Utah Revised Limited Liability Act precludes suit against Ms. Larsen because "[a] membership interest in an LLC [] does not give the member any interest in the real property owned by the company." (Opp'n 8-9, ECF No. 20.) According to the allegations of the Proposed Amended Counterclaim, Wild Horses had a contract with both Ms. Larsen and Riverbend Ranch prohibiting advertising. (Proposed Am. Compl. ¶¶ 6-9, ECF No. 14-1.) Given that the Court must take these allegations as true, *Alvarado,* 493 F.3d at 1215, the Court cannot refuse amendment on this ground. To the extent the Riverbend Plaintiffs want to raise such an argument in a motion for summary judgment, they should do so in a separate motion.

## CONCLUSION

Due to a lack of opposition, the Court GRANTS Wild Horses' request to dismiss its second counterclaim. However, because Wild Horses has failed to plead sufficient facts regarding the performance and damages elements of a breach of contract claim under California law, the Court DENIES Wild Horses' request to add Riverbend Ranch as a Counterclaim-Defendant to its first counterclaim without prejudice. The Court gives Wild Horses fourteen (14) days to file a renewed Motion to Amend that contains sufficient factual allegations regarding each element of a breach of contract claim under California law.

DATED this 27th day of February, 2017.

                                          BY THE COURT:

                                          _____
                                          EVELYN J. FURSE
                                          United States Magistrate Judge