JOANN SHIELDS (4664)
SHIELDS LAW FIRM, P.C.
13636 Vestry Road, Suite 1000
Draper, Utah   84020
Tel. (801) 816-9592
Fax (801) 816-9593
*jshields@shieldslawfirm.net*

*Attorneys for Plaintiffs Tamara Rae Larsen
and Riverbend Ranch Equestrian Center, LLC*

_____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

_____

| | |
|---|---|
| RIVERBEND RANCH EQUESTRIAN CENTER, LLC, a Utah Limited Liability Company; and TAMARA RAE LARSEN, an Individual, | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO RENEWED MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM** |
| Plaintiffs, | |
| vs. | Civil No. 2:15-cv-00751-JNP-EJF |
| ROBERT DUVALL, an individual; ROBERT CARLINER, an individual; WILD HORSES PRODUCTIONS ENTERTAINMENT LLC, a Canceled California Limited Liability Company; and JOHN DOE DEFENDANTS I - XX, | The Honorable Jill Parrish<br><br>(ORAL ARGUMENT REQUESTED) |
| Defendants. | |

_____

Plaintiff Tamara Rae Larsen, by and through her counsel, Joann Shields, of and for

Shields Law Firm, P.C., hereby submits the following PLAINTIFF'S MEMORANDUM IN

OPPOSITION TO RENEWED MOTION FOR LEAVE TO FILE AMENDED

COUNTERCLAIM. Riverbend Ranch Equestrian Center LLC ("RRLLC") and Ms. Larsen respectfully request oral argument.

## INTRODUCTION

Defendant Wild Horses Entertainment Productions, LLC's ("WHPE") renewed motion for leave to amend the counterclaim ("Renewed Motion") attaches a second proposed amendment ("2ACC") that does not correct fatal defects in the first proposed amendment ("1ACC"). Specifically, no legally sufficient factual allegations support threadbare contractual allegations. WHPE gave the 2ACC its best creative writing effort, and, while novel, it is implausible, confusing, lacking in common sense and unsupported by factual allegations. WHPE's Renewed Motion should be denied without leave to amend, because it would be subject to dismissal and further amendment would be futile.

## FED. R. CIV. P. 15(a) STANDARDS

Under Fed. R. Civ. P. 15(a) the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Jefferson County School District No. R–1 V. Moody's Investor's Services, Inc.*, 175 F.3d 848, 858 (10th Cir. 1999) (affirmed denial of leave to amend where antitrust claims would have been subject to dismissal); *see TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir.1992).

## FED. R. CIV. P. 12(b)(6) STANDARDS

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the U.S. Supreme Court rejected the well-established rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief."[1] The *Twombly* Court declared that this "no set of facts" standard had "earned its retirement" and would be "best forgotten as an incomplete, negative gloss on a pleading standard." *Twombly*, 550 U.S. at 563. **Under *Twombly*, a complaint must present enough facts to state a claim for relief that is plausible on its face.** *Id*. at 570.

"[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 565; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, claims must across the line "from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In *Iqbal*, the U.S. Supreme Court held that *Twombly*'s pleading standard applies to "all civil actions." *Iqbal*, 556 U.S. at 684. The *Iqbal* Court also highlighted two working principles underlying the *Twombly* decision. The first principle is that a court need not accept as true legal conclusions couched as factual allegations. *Id*. at 678-79. The "doors of discovery" are not "unlock[ed] for a plaintiff armed with nothing more than conclusions" or allegations simply reciting the elements of a cause of action. *Id*.

The second principle is that to survive a motion to dismiss, a complaint must state a plausible claim for relief based on a defendant's misconduct and not just the mere possibility that a defendant's actions constituted misconduct. *Id.* at 679. The *Iqbal* Court noted that determining

---

[1] WHPE supports its Renewed Motion with the same cases as the Initial Motion, none of which support amendment. *Albers v. Board of County Com'rs of Jefferson County, Colo.*, 771 F.3d 697, 705 (10th Cir. 2014), affirmed denial of leave to amend, holding liberality has its limits. *Hardin v. Manitowac-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982), concerns trial of a phantom defendant by consent. *Gillette v. Tansy*, 17 F.3d 308, 312-13 (10th Cir. 1994), concerns lenity toward a *pro se* criminal defendant convicted of serious crimes. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006), holds that leave should not be "freely given" if the "underlying . . . circumstances" may not be "a proper subject of relief," which describes the Renewal Motion based on contradictory allegations that amount to fraud on the Court regarding WHPE's performance of the Location Agreement.

whether a claim for relief is plausible will be context-specific and will require the reviewing court to "draw on its judicial experience and common sense." *Id*.

Accordingly, under *Twombly* and *Iqbal,* allegations that merely conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 678; *Twombly*, 550 U.S. at 557. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Thus, the reviewing court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 556; *See Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. Pro. 12(b)(6). *Twombly*, 550 U.S. at 558.

# ARGUMENT

Because WHPE has not cured the 1ACC's fatal defects, the Renewed Motion should be denied, since the 2ACC would be subject to dismissal.

## I. ALLOWING 2ACC WOULD BE FUTILE, BECAUSE IT WOULD BE SUBJECT TO DISMISSAL SINCE IT IS STILL FATALLY DEFECTIVE.

The 2ACC should be dismissed with prejudice, because it fails to correct what the Court ruled were fatal pleading defects. (Mem. Dec., at 7-11)

### A. The 2ACC Fails Adequately to Allege Facts Supporting any Damages Claim.

The 2ACC's damages claims are unsupported by facts, implausible and irredeemable.

#### 1. Utah law applies, because, among other grounds, California Lacks relevant contacts with the Location Agreement.

The Order Granting in Part and Denying in Part Motion for Leave to File Amended Counterclaim, dated February 27, 2017, at 7-8, states that "the Riverbend Plaintiffs do not allege any special circumstances for departing from this choice of law provision, . . . ." The all-important question of choice of law, however, was not at issue in the plaintiff's Initial Motion, which relied exclusively on Utah and Tenth Circuit case law. WHPE did not cite a California case until it replied, after which Ms. Larsen and RRLLC had no further briefing or oral argument opportunity. The choice of law issue has not been briefed or argued.

Ms. Larsen and RRLLC therefore seek to address conflicts of law questions relevant to the Renewed Motion and respectfully request reconsideration of the Court's application of California law, where that state clearly lacks relevant contacts to this action.

"It is well-settled that in making a choice of law determination, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Electrical*

*Dist., Inc. v. SFR, Inc.,* 166 F.3d 1047, 1083 (10th Cir. 1999) (holding Utah law should apply despite contractual agreement to apply Colorado law).  In *Electrical Dist.*, the Tenth Circuit stated the general principles governing "whether parties can stipulate to choice of law in their contract."

> We believe that Utah, like other jurisdictions, would look to general contract principles to resolve the question of whether parties can stipulate to choice of law in their contract. It is generally recognized that:
>
> > [t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties [sic] choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Electrical Dist.*, 166 F.3d at 1083-84 (quotation omitted); Restatement (Second) of Conflict of Laws, § 187 (1971 & 1988 Revisions).  *Electrical Dist.*, *id*. at 1084, rejected the agreed upon Colorado law in favor of Utah law, even though Colorado had "a substantial connection" to the contract, because one party was headquartered there.  The Court held that Utah had a "greater interest in the resolution of the issue . . . ."  *Id*.  Here, California has no connection to the Location Agreement.

*Rutherford ex rel. Rutherford v. Talisker Canyons Finance Co., LLC*, 2014 UT App 190, ¶¶ 19-21, 333 P.3d 1266, sets out Utah's choice of law principles, which dictate application of Utah law to this case. In *Rutherford*, *id*., the Supreme Court affirmed rejection of a Colorado choice-of-law provision the district court's application of Utah law, based on its determination that "Utah is the only state that has an interest in the outcome of the case."

> "Since Utah is the forum state, Utah's choice of law rules determine the outcome of" whether Utah law or Colorado law applies. *See Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 14, 54 P.3d 1054. To determine whether the choice of Colorado law will govern . . . , we must determine first whether "'two or more states have an interest in the determination of the particular issue'" in this case and, if so, we then analyze whether Colorado has a "'substantial relationship to the parties or the transaction'" or there is a "'reasonable basis for

the parties['] choice.'" *Prows v. Pinpoint Retail Sys., Inc*., 868 P.2d 809, 811 (Utah 1993 (quoting Restatement (Second) of Conflict of Laws § 187(2)(a) & cmt. d (Supp.1988)).

Here, the analysis stops on prong one, because two states do not "'have an interest in the determination of the particular issue,'" since California has <u>no</u> interest in it. *Rutherford,* 2014 UT App 190*,* ¶ 21; *Prows*, 868 P.2d at 811. Prong two also fails, for lack of relevant contacts.

The *Rutherford* Court looked to *Prows,* 868 P.2d at 811, where a Canadian company had reason to want all claims litigated in New York, but "[t]he existence of that 'reasonable basis,' . . . [was] without effect" because "New York [had] no interest in the determination of [the] case." *Rutherford*, 2014 UT App 190, ¶ 22 (quoting *Prows*, 868 P.2d at 811). Referring to *Prows*, 868 P.2d at 811, *Rutherford, id*.*,* set out "relevant contacts" factors:

> The court identified various "relevant contacts" that Utah had with the case and concluded that Utah was "the only state with an interest in the action." *Id*. (internal quotation marks omitted). Specifically, the court noted that a "Utah plaintiff brought this suit against a Utah defendant and a Canadian defendant," that the contract "was to be performed in Utah," that the contract "was signed in Utah, and [that] the alleged breach and tortious conduct occurred [in Utah]." *Id*. In other words, without any similar relevant contacts, New York had no interest in the case for the choice-of-law provision to be enforceable. *Id*.

*Rutherford* then looked to *Restatement of Conflict* § 188 to resolve its choice of law questions. *Rutherford,* 2014 UT App 190*,* ¶ 21 (noting that Utah courts should apply the test "explained in to resolve "a conflict of laws question in a contract dispute")).

> The Restatement lists several factors a court might consider in analyzing the significance of a state's relationship to the parties and transaction at issue, including, "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Restatement (Second) of Conflict of Laws* § 188(2) (1971).

Applying the Restatement and on grounds applicable to the instant case, *Rutherford* held that Utah's interest predominated over Colorado's interest:

> [A]s in *Prows*, the state of Utah clearly has an interest in the determination of this case; the [plaintiffs] entered into the [contract] while domiciled in Utah, they remained domiciled in Utah at the time of [the] injury, [and the] injury occurred in Utah, . . . Accordingly, the choice-of-law provision does not control in this case and we rely on Utah law to determine the enforceability of the [contract].

**California has no relevant contacts to this action.** The Complaint alleges facts showing WHPE was has never been registered in California from the Location Agreement's formation to the present. (Complaint ¶¶ 50-62) The Location Agreement shows WHPE's Utah address, and its only reference to California is the choice of law provision. (Location Agreement, attached and incorporated as Exhibit "A") The 2ACC alleges WHPE is a Delaware entity and does not mention California. California has relevant contacts with WHPE, the plaintiffs, property, Location Agreement, injury, or damages.

**Utah is the only state with relevant contacts to the Location Agreement and this action.** Ms. Larsen and RRLLC negotiated and entered into the Location Agreement in Utah. WHPE's Executive Producer Mark Mathis negotiated from, and signed the Location Agreement in, WHPE's office at 1000 West 2610 South, Salt Lake City, Utah 84119. Ms. Larsen and RRLLC were injured while domiciled in Utah and remain domiciled in Utah. *Wild Horses* was filmed entirely in Utah. The cause of action arose in Utah, and the injury and damages were incurred and sustained in this State. Utah law should apply to this case. *Electrical Dist.*, *id*. at 1084; *Rutherford*, 2014 UT App 190, ¶¶ 19-21; *Prows*, 868 P.2d at 811; *Restatement* § 187(2)(a) & cmt. d.

  2. **Under Tenth Circuit and Utah law, the 2ACC improperly seeks equitable relief as a remedy for breach of contract.**

  2ACC improperly seeks the <u>equitable</u> remedy of "disgorgement of profits," which is not a breach of contract remedy in this instance. Disgorgement is an extraordinary remedy that goes beyond a plaintiff's damages, requiring the breaching party to refund additional profits gained in the

breach. See 3 D. Dobbs, *Law of Remedies* § 12.7(3), pp. 166–167 (2d ed. 1993).  In American law, disgorgement of profits is not generally an available remedy for breach of contract. *Id.*, § 12.7(4), at 171.  "Where an enforceable express contract governs the parties' relationship," equitable remedies are not available. *See Member Services Life Insurance Co. v. American National Bank and Trust Co.*, 130 F.3d 950, 957–58 (10th Cir.1997).

In *Trugreen Companies, L.L.C. v. Mower Brothers, Inc.*, 199 P.3d 929, 934 (Utah 2008), the Supreme Court held that an equitable remedy — such as an accounting for profits — is not available for breach of contract, which must allege legal damages.  Citing *American Air Filter Co. v. McNichol*, 527 F.2d 1297, 1300 (3d Cir.1975), *Trugreen,* 199 P.3d at 934, holds that, in a breach of contract context, an equitable remedy is not a substitute for legal damages.  *Trugreen*, *id.*, quotes *American Air Filter*'s reasoning:

> When an efficient breach occurs, a breaching party may retain its profits in excess of a plaintiff's losses as long as the plaintiff is made whole. As was stated in *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1289 (7th Cir.1985), such a standard is beneficial to both parties because the nonbreaching party receives what it bargained for and the breaching party is able to retain its profits made through its more efficient business practices.

*American Air Filter*, 527 F.2d at 1300.  The 2ACC does not allege any factual basis for its implication that any party realized profits to disgorge.  The 2ACC is futile as it would be subject to dismissal for seeking an unavailable remedy to a breach of contract claim.

    **3.    Application of California law to the disgorgement claim is moot, because the 2ACC fails to allege "restitutionary disgorgement."**

Even if California law should apply — which it should not — the 2ACC fails to cure the 1ACC's fatal defect of not alleging facts supporting "restitutionary disgorgement."  (Mem. Dec.

To support its disgorgement of profits damages, WHPE scrounged to find only one California case, *Ajaxco Inc. v. E*Trade Group, Inc.*, 37 Cal. Rptr. 3d 221, 224-25 (Cal. Ct. App. 2005), which

is immediately distinguishable from this case, because its contractual breach involved misappropriation of a trade secret, and the disgorgement of profits was in the amount of the defendant's unjust enrichment from saving "a lot of money" by stealing software code.  *Id*. at 249.

By sharp contrast, the 2ACC involves a piece-of-junk, dangerous, unsightly prop that was so worthless WHPE dumped on RRLLC and escaped the cost of its removal.  No trade secret was violated, and there is no unjust enrichment to disgorge.

Interpreting *Ajaxco*, *id.*, this Court noted that "[t]he court did acknowledge that the plaintiff could not have received non-restitutionary damages in the form of disgorgement of profits because that would have put him in a better position than before the breach."  (Mem. Dec., at 10 (citing *Ajaxco*, 37 Cal. Reptr. at 248))   This Court held the 1ACC was fatally defective because it "lacks sufficient detail to determine which kind of disgorgement it seeks."  (Mem. Dec. at 11)

The 2ACC did not cure that defect by mentioning "restitutionary" disgorgement, much less alleging any facts supporting that allegation.  Rather, it merely alleged a one-liner legal conclusion:

> 21.     WHPE is also entitled to disgorgement of all profits obtained by Plaintiffs from advertising property by referencing the Film.  (2ACC ¶ 21, at 5)

This Court's rejection of the 1ACC applies equally to the 2ACC: "Nowhere in the [2ACC] does Wild Horses explain *how* it incurred damages from the Riverbend plaintiffs' alleged breach or of what those damages might consist."  (Mem. Dec. at 9; emphasis in original)

> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, so not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  Thus the Court concludes Wild Horses' [1ACC] fails to plead sufficient facts regarding the damages element of its breach of contract claim.  *See Orcilla v. Big Sur, Inc.*, 198 Cal. Rptr. 3d 715, 733-34 (Cal. Ct. App. 2016) (upholding trial court's grant of demurrer as to breach of contract claim because plaintiffs failed to allege how bank's breach of deed of trust caused their alleged damages).

(Mem. Dec., at 9).  The 2ACC's claim for an equitable remedy of disgorgement should be rejected.

### 4. The 2ACC's legal damages claim is implausible on its face and lacks legally sufficient supporting factual allegations.

Without real damages the dilapidated, abandoned shed caused, it was hard for WHPE to gin up legal damages allegations, and its effort not only is implausible and unintelligible but laughable:

> 20.   As a direct and proximate result of Plaintiff's breach, WHPE has been and and will continue to be damaged as a result of Plaintiffs' unauthorized advertizing and publicity in connection with the Film, which has infringed on WHPE's right to exploit the Film; such harm and damages include but are not necessarily limited to lost profits from Plaintiffs' unauthorized advertising in connection with the Film and/or reasonable licensing fees WPHE could have earned from Plaintiff's advertising.  Additionally, Plaintiffs' unauthorized attempt to sell props used in the Film has damaged WPHE by devaluing the image of the Film and falsely implying to the public that such sales were authorized by by WHPE.  (2ACC ¶ 20, at 5)

It is hard to imagine a more nonsensical damages claim — in this factual context. *Iqbal,* 556 U.S. at 679, holds that a pleading must state a "plausible claim for relief based on a defendant's misconduct and not just the mere possibility that a defendant's actions constituted misconduct." This Court must look at the damages allegation's context and "draw on its judicial experience and common sense." *Id*.  The Court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 556.

In addition to the facial implausibility, 2ACC ¶ 20 is devoid of facts — versus "threadbare legal conclusions" — as to (1) **<u>HOW</u>** WHPE has been and will continue to be damaged by a brief posting that does not mention WHPE or *Wild Horses* and was taken down nearly two years ago; (2) **<u>HOW</u>** the brief posting regarding an abandoned shed infringed on WHPE's right to exploit the Film — what does that even mean? —; (3) **<u>HOW</u>** the brief posting caused WHPE to lose profits or licensing fees; (4) **<u>HOW</u>** the brief posting devalued the Film's image and falsely implied WHPE authorized the sale — when it did not mention *Wild Horses* or WHPE.

Here again, the **"<u>HOW</u>"** necessary for proximate causation is missing: "Nowhere in the [2ACC] does Wild Horses explain *how* it incurred damages from the Riverbend plaintiffs' alleged

-6-

breach or of what those damages might consist." (Mem. Dec. at 9)   The damages allegations are completely speculative — conjectural license fees, exploitation — nothing but inane "what-ifs." *Mbaku v. Bank of America, Nat. Ass'n*, 628 Fed. Appx. 968, 971 (10th Cir. 2016) (district court properly denied leave to amend as futile when claims were contradictory and speculative).

Notably, the only case WHPE cites in support of 2ACC's legalese palooza involves theft of "commercially valuable confidential information."  *Benedict v. Hewlett-Packard*, 2014 WL 234218, at *5 (N.D. Cal. Jan. 21, 2014).  WHPE can hardly be heard to claim value in an old shed it voluntarily ditched without paying for its removal — which is beyond dispute.

The plausibility pleading standard, as originated in *Twombly* and amplified by *Iqbal*, is a significant threshold and operates to dismiss suits — like this one — crafted merely to survive a motion to dismiss, activate discovery obligations and impose settlement leverage.  The 2ACC is an impermissible "strike suit" with "claims brought not to redress real wrongs, but to take advantage of their nuisance or in terrorem value."  2A *Moore's Federal Practice* § 9.03[1] (2d ed. 1987).

These missing "**HOW**" allegations would subject the 2ACC to dismissal, so amendment of this strike counterclaim is futile.  *Rice v. Valmont Industries, Inc.*,  2012 WL 5358314, *2 (N.D. Okla. 2012) (dismissal proper when conclusory allegation that plaintiff "was aggrieved" surrounded by contradictory and confusing factual allegations fail to identify ***how*** plaintiff was aggrieved). *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1117 (10th Cir. 2009) (trial court may deny leave to amend where amendment would be futile); *Henderson v. Wells Fargo Home Mortgage, Inc.*, 2016 WL 6956617, *4 (D. Utah Nov. 28, 2016) (dismissal with prejudice appropriate because no amendment could cure pleading defects).   Nothing can cure the defective 2ACC.

  **B.** **The 2ACC's Legal Conclusion that It Fully Performed under the Location Agreement Contradicts the Parties' Answers and is False on Its Face.**

In the Memorandum Decision at 7, the Court ruled that:

> . . . Wild Horses' Proposed Amended Counterclaim contains no allegation that Wild Horses performed under the Location Agreement or an excuse for nonperformance. Thus, the Court holds Wild Horses . . . failed to plead the second element of a breach of contract claim adequately . . . .[2]

WHPE tried to cure that fatal defect by making the breathtaking misrepresentation that it "has <u>duly and fully performed</u> **all** duties required of it under the Location Agreement, . . ." (2ACC ¶ 18; emphasis added)  Location Agreement ¶ 8 provides for each plaintiff to receive a screen credit at the end of *Wild Horses*: "[WHPE] agrees to name RIVERBEND RANCH EQUESTRIAN CENTER, LLC and TAMARA RAE LARSEN in the Picture's credits. . . ." (Location Agreement ¶ 8, Ex. A)  WHPE's 2ACC ¶ 18 misrepresentation flatly contradicts its Answer's admissions that it did NOT provide Ms. Larsen and RRLLC screen credits:

> 3. Answering Paragraph 3, WHPE admits that Plaintiffs are not expressly identified by name in the credits that appear on screen at the end of the Film.
>
> 45. Answering Paragraph 45, WHPE admits that there are on-screen credits at the end of the Film that identify certain vendors and locations.  WHPE also admits that the on-screen credits that appear at the end of the Film do not expressly identify Plaintiffs by name.

(WHPE Answer ¶ 3, at 2; ¶ 45, at 11, attached and incorporated as Exhibit "B")

WHPE's sentence fragment regarding its alleged full performance of ALL duties under the Location Agreement cannot be taken as true when it contradicts WHPE's admissions of non-performance — which a mere viewing of *Wild Horses'* screen credits will prove.  This Court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 556.

---

[2] The Court applied California law, *Hamilton v. Greenwich Inv'rs XXVI, LLC*, 126 Cal. Rptr. 3d 174, 183 (Cal. Ct. App. 2011).  Utah breach of contract claims require the same performance element: "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages." *Eleopulos v. McFarland and Hullinger*, LLC, 2006 UT App 352, ¶ 10; 145 P.3d 1157 559.

2ACC ¶ 18 is so patently false that it could amount to fraud on the court warranting dismissal. *Webb v. Claimetrics Management, LLC*, 2009 WL 4730789, *   (D. Utah, Dec. 7, 2009).

WHPE also misapprehends the performance element: 2ACC ¶ 18 alleges that "neither of the Plaintiffs was excuses from performing their contractual obligations," but the element requires factually support allegations that <u>WHPE</u> was not excused from performing its obligations. Consequently, the 2ACC fails on its face.

In fact, WHPE's argument that it can merely allege it fully performed is so desperate that WHPE had to rely on a case that holds precisely the opposite.[3] In *Durell v. Sharp Healthcare*, Cal. App.4th 1350, 1367, 108 Cal. Rptr. 3d 682, 697 (Cal. Ct. App. 2010), the court repudiated the plaintiff's barebones allegation that he had fully performed the contract he claimed was breached.

> [Plaintiff's] assertion that an excuse for the nonperformance of a contract may be generally pleaded is incorrect. . . . We reject [plaintiff's] claim that the SAC sufficiently pleads an excuse for nonperformance. . . . SAC does not allege [plaintiff] paid [defendant] anything toward his bills . . . . <u>We agree that the breach of contract cause of action fails for insufficient allegations of excuse for nonperformance</u>.

(Emphasis added.)  The 2ACC does not even allege excuses for WHPE's nonperformance.

The Tenth Circuit has cautioned that "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In *Vilar v. Equifax Information Services, LLC*, 2014 WL 7474082, *25 (D. N.M. Dec.17, 2014),  the Court dismissed claims that reached "beyond the realm of plausibility into the fanciful." (Citing *Twombly*, 550 U.S. at 546); *Allen v. Tucker*, 2013 WL 6028157, *5 (D. Colo. Nov. 13, 2013)

---

[3]WHPE's only other performance element citation also shows desperation. *Lynn v. Knob Hill Imp. Co.*, 177 Cal. 56, 60 (Cal. Ct. App. 1917), is a 100-years old and involves specific performance of a property purchase agreement — in which the specific performance is defined.

(no cognizable claim where allegations were "confusing, contradictory, and conclusory in nature"); *Avington v. Maxim Healthcare Services Inc.*, 2016 WL 5762722, *3 (N.D. Okla. Sept. 30, 2016) ("internally contradictory" allegations could not support claim); *National Ass'n of Investors Corp. v. Bivio, Inc.*, 2012 WL 1695042, *3 (D. Colo. May 15, 2012) (claim based on "confusing and contradictory" allegations was subject to dismissal).

Here, as in *Henderson*, 2016 WL 6956617, *3 (D. Utah Nov. 28, 2016), the "vague and sometimes contradictory nature of . . . allegations implies that there are no further facts [that] can [be] allege[]. Therefore, an opportunity to amend would be futile in this situation. For these reasons, the case is dismissed with prejudice."

### III.  WHPE LACKS STANDING TO SUE, AND THE COURT LACKS SUBJECT MATTER JURISDICTION.

Although WHPE corrected no pleading defects, Ms. Larsen and RRLLC re-raise the lack subject matter jurisdiction argument because it goes to the Court's lack of authority to take any steps other than to reject the 2ACC. They incorporate by reference into this response the entire standing argument set out in Plaintiffs' Memorandum in Opposition to Motion for Leave to File Amended Counterclaim by Defendant Wild Horses Productions Entertainment, LLC, dated June 1, 2016, at 3-7, attached and incorporated as Exhibit "C."

### CONCLUSION

The plaintiffs respectfully request that the Court deny the motion for leave to amend, because amendment allowing 2ACC would be futile, because the claim would be subject to dismissal.

DATED this 27th day of March 2017.

                                                                                           Respectively submitted,

                                                                                           SHIELDS LAW FIRM, P.C.

                                                                                           /s/ Joann Shields
                                                                                           _____
                                                                                           JOANN SHIELDS

                                                                                           *Attorneys for Plaintiffs Tamara Rae Larsen*
                                                                                           *and Riverbend Ranch Equestrian Center, LLC*