IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RIVERBEND RANCH EQUESTRIAN CENTER LLC, a Utah Limited Liability Company; and TAMARA RAE LARSEN, an individual;<br><br>Plaintiffs,<br>v.<br><br>ROBERT DUVALL, an individual; ROBERT CARLINER, an individual; WILD HORSES PRODUCTIONS ENTERTAINMENT LLC, a Canceled California Limited Liability Company; and JOHN DOE DEFENDANTS I – XX;<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>Case No. 2:15-cv-751<br><br>District Judge Jill N. Parrish |

Before the Court is Defendant Wild Horses Productions Entertainment LLC's ("Wild Horses") motion to dismiss its remaining counterclaim with prejudice (ECF No. 41). Plaintiffs oppose the motion (ECF No. 49). Also pending before the Court is White Horses' motion for leave to amend the same counterclaim (ECF No. 26). The Court has reviewed the filings, and oral argument would not significantly assist the Court in its determination. For the reasons below, the Court grants White Horses' motion to dismiss and denies as moot its motion for leave to amend.

## I. BACKGROUND

This is a contract case. In 2014, White Horses contracted with Plaintiffs Riverbend Ranch Equestrian Center LLC ("Riverbend Ranch") and Tamara Rae Larsen to use the Riverbend Ranch in its production of the motion picture "Wild Horses." ECF No. 10-1. On September 11,

1

2015, Plaintiffs filed a Complaint in the Utah Third District Court against Robert Duvall, Robert Carliner, Wild Horses, and John Doe Defendants I–XX. Plaintiffs alleged that Defendants breached the Location Agreement by failing to include Plaintiffs' names in the movie's screen credits. Plaintiffs also alleged breach of the implied covenant of good faith and fair dealing. On October 30, 2015, Defendants removed the case to this Court based on diversity jurisdiction.

Once the case was in this Court, Wild Horses filed an Answer to the Complaint alleging two counterclaims: (1) breach of the Location Agreement by Larsen for posting advertisements to sell a prop used in the movie without Wild Horses' consent; and (2) breach of the Location Agreement against both plaintiffs for interference with Wild Horses' filming and full use of the Riverbend Ranch.

On May 4, 2017, Wild Horses filed a motion for leave to amend its first counterclaim to include Riverbend Ranch and to dismiss its second counterclaim (ECF No. 14). The Court granted Wild Horses' request to dismiss the second counterclaim but denied without prejudice the request to add Riverbend Ranch as a counter-defendant to the first. Wild Horses renewed its motion to add Riverbend Ranch as a counter-defendant on March 13, 2017. That motion is still pending.

On May 18, 2017, Plaintiffs accepted an offer of judgment as to claims asserted in the Complaint under Federal Rule of Civil Procedure 68. Under the terms of that offer, the Complaint proceeding has been resolved, except for a determination of attorneys' fees to be awarded to Plaintiffs. After Plaintiffs accepted the offer of judgment, the parties attempted to negotiate a global resolution of the attorneys' fees and Defendants' remaining counterclaim. Those negotiations failed, and the parties disagree on the appropriate resolution. In essence, Defendants want the Court to dismiss their remaining counterclaim, leaving the parties to split

attorneys' fees. Plaintiffs object, seeing Defendants' motion to dismiss the counterclaim as an attempt to "ride off into the sunset after saddling [Plaintiffs] with thousands of dollars" in attorneys' fees. ECF No. 49 at ii.

## II. DECLARATIONS OF JOANN SHIELDS AND TAMARA LARSEN

As a preliminary matter, the Court turns to the Declarations of Joann Shields and Tamara Larsen that Plaintiffs submitted in support of their memorandum opposing Wild Horses' motion (ECF No 49, Exhibits B, C). Wild Horses argues that these declarations are self-serving and conclusory, that they lack foundation, and that they set forth no facts.

The Court agrees. The nearly identical declarations amount to legal horseplay. They allege only that the declarants "have personal knowledge of the facts set out in Plaintiffs' Response Memorandum" and that those facts "set out in the Motion and supported by [their declarations] are true." Bare-bone declarations of this nature add nothing of value to Plaintiffs' motion. They omit even the most basic details necessary to support a finding that either declarant has personal knowledge of the matters they declare; they are thoroughly self-serving and conclusory; and they leave entirely to the Court's imagination to which of the facts in Plaintiffs' 18-page motion they refer. Therefore, the Court excludes both declarations from its consideration. *See Hansen v. Native Am. Oil Refinery Co.*, No. 2:06-CV-109, 2012 WL 567191, at *7 (D. Utah Feb. 21, 2012) ("Such conclusory statements . . . should be excluded from consideration unless the declaration lays a foundation of the declarant's personal knowledge of the matter."), *aff'd sub nom. Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244 (10th Cir. 2013); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("[T]he nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.").

## III. CHOICE OF LAW

Underlying the parties' dispute is the issue of applicable law. Plaintiffs argue that "Utah law governs attorney fees and costs after voluntary dismissal with prejudice." ECF No. 49 at 1. But Defendants jockey for position, contending that "Plaintiffs are bound to the provisions of the Location Agreement they negotiated and signed, and consequently, California law governs." ECF No. 52 at 9.

To evaluate the effect of a contractual choice-of-law clause, courts in the Tenth Circuit look to the choice-of-law rules in the forum state. *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1236 (10th Cir. 2007). In Utah, "courts generally uphold choice-of-law provisions based on the intent of the contracting parties and a respect of the parties' right to choose the governing law for a contract." *GRB Enters. LLC v. JPMorgan Chase Bank, N.A.*, No. 2:11-cv-833, 2012 WL 845418, at *3 (D. Utah Mar. 12, 2012) (citing *Innerlight, Inc. v. Matrix Group, LLC*, 214 P.3d 854, 857–58 (Utah 2009)). Furthermore,

> Utah law provides that "the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue which would be the state of the applicable law in the absence of an effective choice of law by the parties."

*Id.* (quoting *Elec. Distribs., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1084 (10th Cir. 1999)) (internal alterations omitted).

The Location Agreement provides that, in the event of litigation, the agreement "shall be governed and construed according to the laws of the State of California in all respects." ECF No. 13-1 at 7. Consequently, under the rule of *Electrical Distributors*, California law applies to the Location Agreement unless one of two exceptions applies: (1) California has no substantial

relationship to the parties or the transaction; or (2) application of California law would be contrary to a fundamental policy of Utah. Plaintiffs have not argued that applying California law would be contrary to a fundamental Utah policy, so the Court considers only the first exception.

Plaintiffs are convinced the first exception applies. With unbridled zeal, they misrepresent the holding in *Electrical Distributors*, painting the Tenth Circuit's analysis as comparing the relative interests of states and holding that "Utah had 'a greater interest in the resolution of the issue.'" *Id.* (quoting *Electrical Distributors*, 166 F.3d at 1083-1084). In fact, that court held that "Colorado [had] a substantial connection to the contract," and that "under Utah's choice of law principles, applying the law of the state chosen by the parties in their contract is permissible." *Electrical Distributors*, 166 F.3d at 1084–1086. The court concluded that the contract was "enforceable under Colorado law, as adopted by the parties." *Id.* at 1086.

In the instant case, Utah does have substantial connections with the parties and the contract. But that is a horse of a different color. The proper inquiry is "whether [the parties' chosen forum] has a substantial relationship, not a greater relationship than Utah." *GRB Enters.*, 2012 WL 845418 at *4. It is undisputed that Wild Horses is an LLC with two members, one of whom is a resident of California. That connection is sufficient. *See* Restatement (Second) of Conflicts of Laws § 187 (1971) (noting that a substantial relationship exists "where one of the parties is domiciled or has his principle place of business" in the state). Therefore, Plaintiffs are bound by the terms of the contract they negotiated and signed. California law governs.

## IV. VOLUNTARY DISMISSAL OF THE REMAINING COUNTERCLAIM
### A. AN OPERATIVE COUNTERCLAIM

Plaintiffs argue that "[i]n point of fact, there is no operative counterclaim voluntarily to dismiss with prejudice." ECF No. 49 at ii. And Plaintiffs do not make this assertion as an alternative. Instead, they go tilting at windmills, maintaining that there is no counterclaim even

5

as they argue it should not be dismissed. Their bizarre, contradictory assertion rides roughshod over the Court's July 18 order that the parties "clarify their intention regarding the remaining counterclaim in writing." ECF No. 40. It also flies in the face of Plaintiffs' previous conduct in this case. On December 14, 2015, Plaintiffs filed an answer to Wild Horses' counterclaims, devoting a full page of text to answering the counterclaim in question. ECF No. 11 at 4–5. And in two separate motions, Plaintiffs have opposed Defendants' motions to amend that counterclaim. ECF Nos. 19 and 30. Now, Plaintiffs attempt to switch horses in midstream and deny the existence of the same counterclaim they have thrice recognized and whose dismissal they now oppose. *See* ECF No. 49.

Plaintiffs' cavalier position perhaps stems from a misunderstanding of Wild Horses' most recent motion to file an amended counterclaim. In short, that motion seeks leave to amend Wild Horses' first counterclaim from "Breach of Contract against Plaintiff Larsen" to "Breach of Contract against Plaintiffs." ECF No. 26-1 at 4. Wild Horses' motion to amend did not eliminate the counterclaim against Larsen.

### B. LEGAL PREJUDICE

Now that Plaintiffs have accepted the Rule 68 offer of judgment, Wild Horses asks the Court to dismiss its remaining counterclaim pursuant to Federal Rule of Civil Procedure 41(a)(2). Rule 41(a)(2) permits a party to dismiss an action voluntarily "only by court order, on terms that the court considers proper." *See also Brown v.* Baeke, 413 F.3d 1121, 1123 (10th Cir. 2005) (internal citation omitted). But "[a]bsent legal prejudice to the defendant, the district court normally should grant such a dismissal." *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997) (internal quotation marks omitted). What, exactly, constitutes "legal prejudice" is not entirely clear, but the Tenth Circuit has identified four factors courts should consider: "[1] the opposing party's effort and expense in preparing for trial; [2] excessive delay and lack of

diligence on the part of the movant; [3] insufficient explanation of the need for a dismissal; and [4] the present stage of the litigation." *Id.* The Court has broad discretion in determining whether to dismiss, and its exercise of discretion will be upheld unless it was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Brown*, 413 F.3d at 1124. Considering Defendants' motion under the factors identified in *Ohlander*, the Court concludes that each factor favors dismissal.

1. **Plaintiffs' Effort and Expense in Preparing for Trial**

Plaintiffs' mule-headed insistence that there is no operative counterclaim makes it easy for the Court to resolve the first factor. If Plaintiffs indeed believe there is no counterclaim, then certainly they have not spent significant effort or expense preparing to defend against it at trial. If, on the other hand, they do believe that there is a counterclaim yet to be dismissed and have spent significant effort or expense preparing to defend against it, then their argument that there is no counterclaim constitutes a fraud on the Court. The Court assumes the former, and this factor favors dismissal.

2. **Delay or Lack of Diligence by Wild Horses**

Wild Horses has not stalled in prosecuting the counterclaim. Seven days after this case was removed to this Court, Wild Horses filed an Answer, which included the counterclaim at issue. When the Court denied Wild Horses' motion for leave to amend the counterclaim and granted it 14 days to file a renewed motion, Wild Horses filed a renewed motion 14 days later. That motion remains pending. There is no evidence that Wild Horses reigned in its prosecution of the counterclaim, and so this factor also favors dismissal.

3. **Explanation of the Need for Dismissal**

Wild Horses' explanation of the need for dismissal is sufficient. Wild Horses has explained that, once the Complaint was resolved by the Rule 68 offer, "the monetary damages

7

associated with [the counterclaim's alleged] breach are ultimately not worth pursuing." ECF No. 41 at 5. Plaintiffs argue this factor at great length, painting Wild Horses' motion as a dog-and-pony show designed to avoid resolution on the merits and thereby avoid paying for Plaintiffs' attorneys' fees. However, "the movant is only required to give more than a 'perfunctory excuse about extraneous matters.'" *Global Fitness Holdings, LLC v. Federal Recover Acceptance, Inc.*, No. 2:13-cv-00204, 2015 WL 1467352 at *3 (D. Utah Mar. 30, 2015) (quoting *Brown*, 413 F.3d at 1126). Avoiding cost and delay is more than a perfunctory excuse, and the third factor favors dismissal.

### 4. Present Stage of the Litigation

This case is still in its early stages. Very little discovery has taken place, and the Scheduling Conference to set a trial date will not occur for another eight months. Therefore, the fourth factor favors dismissal.

### C. ATTORNEY FEES

The Court is surprised to learn that Plaintiffs have incurred expenses—let alone in the thousands of dollars—defending against a counterclaim they insist does not exist. Yet Plaintiffs contend that they are "entitled to attorney fees after dismissal of a voluntary operative counterclaim with prejudice." ECF No. 49 at 1.

The Location Agreement contains a provision indicating that "[i]f litigation is instituted to enforce any term of this settlement agreement, the prevailing party shall be entitled to recovery of its reasonable actual attorneys' fees and costs incurred in such action." ECF No. 10-1 at 7. The question is whether Plaintiffs are the prevailing party if the Court dismisses Wild Horses' counterclaim with prejudice.

Under Utah law, "the defendant is the prevailing party where plaintiff's complaint is dismissed with prejudice." *Cobabe v. Crawford*, 780 P.2d 834, 837 (Utah App. 1989). However,

as the Court has already explained, the Location Agreement should be interpreted using California law. Under California Civil Code § 1717(b)(2), "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section." *See also Glencoe v. Neue Sentimental Film AG*, 168 Cal. App. 4th 874, 876 (2008) ("[W]hen a contract provides that the prevailing party is entitled to attorney fees and the plaintiff dismisses the action with prejudice after the start of trial, the defendant is not entitled to attorney fees as the prevailing party."); *Widman v. Keene*, No. 2:10-cv-459, 2017 WL 650063 (D. Utah Feb. 16, 2017) (applying § 1717 in a diversity action with a California choice-of-law provision). Because California law applies, a voluntary dismissal with prejudice does not result in a "prevailing party" for purposes of the Location Agreement. Plaintiffs have to pony up and pay their own fees.

## V. ORDER

For the reasons above, Wild Horses' motion to dismiss the counterclaim is **GRANTED**, and the counterclaim is **DISMISSED WITH PREJUDICE**. Because the Court dismisses the counterclaim, Wild Horses' pending motion for leave to amend is **DENIED AS MOOT**. The parties will bear their own costs and fees as to the counterclaim.

Signed September 27, 2017.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

9